**B. W. GIBSON et al., Appellants,**

v.

**KOUNTZE INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 7852.

Court of Civil Appeals of Texas, Beaumont.

May 26, 1977.

Rehearing Denied June 16, 1977.

B. F. Whitworth, Jasper, James A. Pakenham, Houston, Zeleskey, Cornelius, Rogers, Berry & Hallmark, Lufkin, for appellants.

Robert Q. Keith, Beaumont, for appellees.

STEPHENSON, Justice.

This is a suit by fifteen property owners against the members of the Board of Equalization, the members of the Board of Trustees and the Tax Assessor-Collector of the Kountze Independent School District. The suit is a direct attack upon the assessment and levy of ad valorem taxes by the School District for the year 1975 upon plaintiffs' properties in the category of "rural land" and "timber land". Trial was by jury, and judgment was rendered upon the verdict denying plaintiffs all relief.

A brief statement as to the position taken by plaintiffs is that the School District put into effect for the tax year 1975 a program of re-appraisal and re-evaluation of rural lands without any attempt to re-appraise or re-evaluate other categories of property in the District. We quote from plaintiffs' brief as follows:

"The thrust of plaintiffs' complaint is not that their lands are overvalued for

tax purposes; that, in our opinion, is not the test of discrimination, illegality and unconstitutionality. Our complaint is that no effort was made by defendants to equalize the values placed on the other properties with the values placed on rural lands of plaintiffs and others, and that such action resulted in plaintiffs and other owners of rural land having to bear more than their fair share of the burden of operating the School District. This, in our opinion, is the test of discrimination, illegality and unconstitutionality. This is a substantial right that may be asserted and enforced in the Courts."

A part of the jury findings are, in substance, as follows:

(10) That the Board of Equalization did not fail to equalize the tax roll for the year 1975 as nearly as possible;

(13) That the School District's tax roll does *not* assess plaintiffs' rural land at substantially higher values than real estate in the City of Kountze, relative to each other;

(15) That the School District's tax roll does *not* assess plaintiffs' rural land at substantially higher values than improvements on rural land, relative to each other;

(17) That the School District's tax roll does *not* assess plaintiffs' rural land at substantially higher values than real property subdivisions outside the City of Kountze, relative to each other.

(19) That the School District assessed the corporate plaintiffs' property at substantially the same percent of its market value as was fixed on the great bulk of the remainder of the property on the tax roll;

(20) That the Kirby Lumber Corporation land and timber had a fair cash market value in the School District of *not less than* $189 per acre on January 1, 1975;

(21) That the Champion International Corporation land and timber had a fair cash market value in the School District of *not less than* $168 per acre on January 1, 1975;

(22) That Southland Paper Mills Corporation land and timber had a fair cash market value in the School District of *not less than* $169 per acre on January 1, 1975;

(23) That Temple-Eastex land and timber had a fair cash market value in the School District of *not less than* $169 per acre on January 1, 1975.

In its brief the School District admits that a plan for re-evaluation of the entire district was begun in 1975 but not completed. The result was an increase in the assessed values of plaintiffs' land and no general increase on property in the City of Kountze and rural subdivisions. However, the School District denies the result was discrimination, because it is urged that the rural lands had been undervalued in previous years. It is argued that a disproportionate increase in taxes does not necessarily result in a disproportionate assessment; that the discrimination can be proven only by comparing the result as it relates to true market value.

■ To be successful in this appeal, plaintiffs must show the School District tax plan resulted in plaintiffs' paying more than their fair share of the taxes. They must show the plan would discriminate against them by assessing their properties at a greater percentage of the true value than the percentage assessed for the properties in other categories. In the answers to special issues 13, 15, 17, and 19, as set out above, the jury findings were to the contrary. Plaintiffs have points of error that those findings have no support and insufficient support in the evidence. We consider only the evidence favorable to the jury findings in passing upon the no-evidence points, and the entire record in passing upon the insufficient-evidence points.

It is first noted that in the answers to special issues 20, 21, 22, and 23, the jury found the cash market value of the land and timber of the four corporate plaintiffs as of January 1, 1975, to be *not less than* certain figures varying from $168 to $189 per acre. It is thus apparent that the jury

findings do not establish the cash market value of either the plaintiffs' properties or the other categories of properties on the tax roll.

■ Bear in mind that plaintiffs had to secure jury findings that, under the plan, plaintiffs' properties were assessed at a higher percentage of true value than the properties assessed in other categories. In the absence of such jury findings, to secure a rendition of this case, they must show that contention was established as a matter of law; to secure a remand of this case, plaintiffs must show that the contrary jury findings were clearly wrong or manifestly unjust. They have failed to make either showing.

There is much evidence in this record that property in the City of Kountze was economically depressed, that land in the rural areas had experienced substantial increase in market value, and that the rural tax assessment had been too low in past years.

Plaintiffs called many witnesses, including two licensed real estate agents, but they failed to offer testimony as to the cash market value of their properties. All denied they had an opinion as to such value. The person employed by the School District to appraise the rural land was called by plaintiffs as an adverse witness. He testified he made a mass appraisal and did not go on each individual tract and count the trees. He first classified the land as either open or timberland and within the timberland as practically no merchantable timber, some on it or a whole lot on it. The bare land was appraised at $150 per acre, and the above three classifications added to the bare land value at $100, $200, and $300 per acre. This witness prepared a written appraisal for the School District which plaintiffs offered in evidence. This written appraisal showed the total number of acres owned by each of the corporate plaintiffs and the total appraised value of each of their properties. In their brief, the plaintiffs have divided the total acreage into the total value, and the result is the four figures the jury found the cash market value to be *not less than*, as shown above in the jury findings. Plaintiffs argue that such values are conclusive and the School District is bound by them. It is admitted the assessed values of the lands of these corporate plaintiffs are 60 percent of those market values set forth in the jury findings. Even if we assume, arguendo, that plaintiffs thereby established the cash market value of their lands and a 60 percent assessment rate, this does not in itself prove the discrimination alleged by them. There are no findings that the assessed rates were lower on other categories of properties and that issue was not proven as a matter of law.

■ Plaintiffs offered evidence to show the assessment of their rural land was increased in value and other categories were not increased. That in itself does not prove that a higher assessment rate resulted on rural properties. Plaintiffs offered evidence, by an expert witness, to show he made a study of sales of 38 parcels of the City of Kountze and the subdivision property, which reflected such properties, was assessed at 32.77 percent of market value. On the other hand, there is much evidence from expert witnesses that in prior years the rural land had not been on a fair ratio compared to local property and that taxes paid in previous years on rural land were not as much as they should have been. Real estate brokers testified that there had been a reduction in values in the City of Kountze while the values of rural land were going up. One of plaintiffs' witnesses testified on cross-examination that one of the corporate plaintiffs' lands had an average of $267.91 worth of standing timber per acre. An expert witness called by the School District testified as to a survey made by him as to the percentage of values of the individual plaintiffs' lands. His testimony showed the assessed values of those rural tracts to be an average of 31 percent of his appraised market values.

Justice Guittard, of the Dallas Court of Civil Appeals, discusses most of the questions of law arising on the appeal before this court in *Lancaster Independent School District v. Pinson*, 510 S.W.2d 380 (Tex.Civ.

App.—Dallas 1974, writ ref'd n. r. e.). It is there stated that the plaintiffs must show that the plan would discriminate against them by deliberately assessing their property at a greater percent of its true value than the percentage assessed for other properties subject to the tax. Citing *City of Arlington v. Cannon,* 153 Tex. 566, 271 S.W.2d 414, 417 (1954); *Atlantic Richfield Co. v. Warren Ind. Sch. Dist.,* 453 S.W.2d 190, 198 (Tex.Civ.App.—Beaumont 1970, writ ref'd n. r. e.), that opinion goes on to make the following statement:

"*If the plan is attacked on the ground of inequality of assessment, however, proof of actual market value of plaintiff's property is necessary, since without such proof no discrimination is established.*" 510 S.W.2d 383 (Emphasis ours)

See *Montgomery County v. Humble Oil & Refining Co.,* 245 S.W.2d 326, 335 (Tex.Civ. App.—Beaumont 1951, writ ref'd n. r. e.).

Plaintiffs failed to secure jury findings that would support their contention that their rural properties were assessed at a higher percentage of true market value than properties in other categories. There is evidence to support the jury findings to the contrary, and these points of error are overruled.

Plaintiffs have a point of error that the trial court erred in permitting the Tax Assessor-Collector to testify that certain rural lands of some of the plaintiffs were worth more than the 100 percent values assigned by the Board of Equalization. Plaintiffs argue the School District is estopped to offer such evidence.

This court held to the contrary in *Montgomery County v. Humble Oil & Refining Co., supra* at 336. It is there held that even though the trial court cannot substitute its ideas of property valuations for valuations made by a Board of Equalization, it may hear evidence as to the true value of a litigant's property when it is necessary to determine the questions of discrimination or harm. All points of error are overruled.

AFFIRMED.