Guadalupe Garza ZAMORA, Appellant,

v.

Miguel A. ROMERO, Appellee.

No. 1378.

Court of Civil Appeals of Texas, Corpus Christi.

April 26, 1979.

Rehearing Denied June 7, 1979.

Terry D. Key, Wilkins & Phillips, McAllen, for appellant.

Gerald Beckman, Huerta, Pena, Beckman, Rodriguez & Alfaro, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This appeal arises out of an action sounding in tort, brought by Miguel Romero against Guadalupe Zamora for damages to

the plaintiff's cattle allegedly caused by the defendant's willfully locking the plaintiff out of an easement over the defendant's land which the plaintiff normally used to gain access to his ranch. The plaintiff also sought injunctive relief against any further lock-out by the defendant. Trial was to a jury, which answered special issues favorably to the plaintiff. Accordingly, the trial court rendered judgment that awarded the plaintiff $15,500.00 damages and enjoined the defendant from obstructing the plaintiff's use of the easement. The defendant has appealed.

Twenty-five points of error are presented. Reversible error is claimed because of: 1) the trial court's refusal to grant a continuance to the defendant; 2) the calling of the defendant's son as a witness under the adverse party rule; 3) the admission of depositions into evidence; 4) the lack of evidentiary support for certain jury findings; 5) and improper jury argument.

The plaintiff and defendant own adjoining lands in Hidalgo County, Texas. The plaintiff has owned his land, consisting of a 100 acre tract and a 190 acre tract, since about 1959. The defendant has owned his land since the 1930's. At the time the plaintiff acquired his land, he was told by the Veteran's Land Board, which was the prospective mortgagee, that he must first acquire an easement of ingress and egress, or a right-of-way, from the defendant assuring him access to the land. Through a course of dealing not relevant to this appeal, the easement was acquired, and the plaintiff took possession of the land.

Then, in September 1973, the defendant's son, at his father's instruction, locked the plaintiff out of the easement. As a result, the plaintiff, who was then grazing 85 head of cattle on the 100 acre tract, was denied access to this pasture and the cattle. The plaintiff remained locked out until February, 1974. The plaintiff lost 20 head of cattle due to malnutrition from September, 1973, until February, 1974.

■ The plaintiff, in points 1 and 3, attacks the trial court's refusal to either grant him a continuance at the time this

cause went to trial, or to take the case off the trial docket entirely. In reviewing these points, we adhere to the well settled rule that the trial court's denial of a motion for continuance is within the sound discretion of the trial court and it will be presumed, absent a showing of an abuse of discretion, that the court properly exercised its discretion. *Hernandez v. Heldenfels,* 374 S.W.2d 196 (1963).

■ On July 15, 1977, the case was set for trial on the merits on October 3, 1977. Mr. Wilkins, attorney for the defendant, was not notified of the setting until September 18, 1977. On October 3, 1977, Mr. Wilkins filed a motion for continuance; as grounds therefor, it was alleged: 1) the case was set on the call docket for trial without notice to him, which was in violation of the local rules; and 2) he did not have time to properly prepare for trial on such short notice. Following the filing of the motion for continuance, a discussion was had on the same day, October 3, 1977, between the trial judge, Mr. Wilkins, and Mr. Beckman, attorney for the plaintiff. The judge asked what was needed for Mr. Wilkins to be ready for trial and Mr. Wilkins represented that he needed plaintiff's income tax returns for the years 1969 through 1974 and some cattle sales tickets which plaintiff had previously agreed to furnish him. Mr. Wilkins told the judge: "I would like to have them by Wednesday." The judge then announced:

"    .    .    .    We will pick a jury this afternoon at 1:30. Supply that material by Wednesday or this case is going out. Pick a jury this afternoon at 1:30; we are going to try it next Monday, any dispute about it, we'll just throw it out."

The clear implication from what took place on Monday, October 3, 1977, was that the defendant would be ready to go to trial on the following Monday, October 10, 1977, if the plaintiff delivered the requested documents to him on Wednesday, October 5, 1977.

Copies of the requested income tax returns were delivered by the plaintiff to the

defendant on Wednesday, October 5, 1977, but the cattle sales tickets were not delivered until Thursday, October 6, 1977, at 10:45 a. m. On Monday, October 10, 1977, prior to the call of the case for trial, counsel for the defendant orally re-urged his motion for continuance because of the violation of local rules in the failure to notify counsel of the setting and also because of the failure of plaintiff to furnish him with the cattle sales tickets on Wednesday, October 5, 1977, as ordered by the court. Counsel for the plaintiff then stated that it was impossible to deliver the sales tickets on Wednesday. The court ruled:

"Defendant's amended motion for continuance is denied."

The case proceeded to trial at 9:30 a. m. on October 10, 1977.

We do not believe that the denial of the motion for continuance, in the light of the sequence of events leading up to the trial of this lawsuit warrants reversal of the trial court's judgment. Although, because of a definite violation of local rules, the defendant was deprived of all but 25 days of preparation for this particular trial, counsel for plaintiff waived any such grounds for a continuance on October 3, 1977. Although the plaintiff was a few hours late in turning over the sales tickets to the defendant, it does not appear to us that the defendant was prejudiced to the extent that he did not have time to prepare his defense and did not receive a fair trial. This case had been pending in the district court for several years before it finally went to trial.

■ The defendant never requested a formal hearing on its motion for continuance, and no evidence on the motion, which was filed on October 3, 1977, and re-urged on October 10, 1977, was ever presented. All the record contains is argument of counsel before the bench on two different occasions. We have no way of knowing whether being put to trial on October 10, 1977, prevented the defendant from putting on certain evidence or urging certain defensive theories. Moreover, the motions for continuance were not sworn motions. When Rule 251, T.R.C.P., which requires that the mo-

tions show sufficient cause "supported by affidavit," is not followed, we must presume that the trial court did not abuse its discretion. *City of Wichita Falls v. Lipscomb*, 50 S.W.2d 867 (Tex.Civ.App.—Fort Worth 1932, writ ref'd). No abuse of discretion is shown. The defendant's first three points are overruled.

By his fourth point of error, the defendant claims that the trial court committed reversible error in allowing the plaintiff to call Juan Lino Garza as an adverse party and cross-examine him without being bound by his testimony. Juan Lino Garza is the son of the defendant Guadalupe Zamora. He was not a party to the suit.

■ Plaintiff announced that he intended to call Juan Lino Garza "under the adverse party rule." Defendant told the court that he was "not an adverse party." Plaintiff then stated that if he could not cross-examine him under the adverse party rule, he wanted to do so as an adverse witness. The trial court did not rule clearly on the matter but did say:

"All right. The Court will allow you to lead the Witness at this time, as to whether or not it developes (sic) under the adverse party rule, I will see . . . you are not bound by his testimony . . . ."

For all practical purposes, Juan Lino Garza was called by plaintiff under Rule 182, T.R. C.P., the adverse party rule.

It was error for the trial court to allow the plaintiff to call Juan Lino Garza to the stand and not be bound by his testimony. The adverse party rule applies only to parties named in the petition and answer, and to certain agents of a named corporate party. *Louis v. Parchman*, 493 S.W.2d 310 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.); *Bell v. Umstattd*, 401 S.W.2d 306 (Tex.Civ.App.—Austin 1966, writ dism'd). The witness was not a party to this suit and the defendant was an individual, not a corporation.

■ Although the trial court's action in allowing the plaintiff to call Juan Lino Garza under the adverse party rule constituted

error, the error was harmless in that such testimony did not produce any evidence damaging to the defendant's defense otherwise uncovered during the course of the trial. Juan Lino Garza testified that it was he who actually locked the gate which prevented the plaintiff from using the easement as a means of entry to his ranch, and that this was done in accordance with the defendant's instructions and with his own knowledge and the knowledge of the defendant that the plaintiff's cattle might suffer. The defendant, when he took the stand in his own behalf, testified to the same effect.

Moreover, the error was not preserved for appellate review. The defendant did not object to the statement by the court immediately after the statement was made and before Juan Lino Garza actually commenced testifying. Counsel for the plaintiff then proceeded to examine Juan Lino Garza. After counsel for the plaintiff had almost finished his examination of the witness, he advised the court that he intended to read a portion of Juan Lino Garza's deposition into evidence. Counsel for the defendant said:

"Juan Lino Garza is not a party."

Following that statement, the trial judge responded:

"your previous objection is overruled."

It is well settled that the party who opposes the admission of evidence must specifically object to the evidence at the time it is offered in order to lay a predicate for appellate review of the action by the trial court. *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex. Sup.1963); *Withers v. Tyler County Lumber Company*, 326 S.W.2d 173 (Tex.Civ.App. —Beaumont 1959, writ ref'd n. r. e.); *Biard Oil Co. v. St. Louis Southwestern Railway Co.*, 552 S.W.2d 588 (Tex.Civ.App.—Tyler 1975, no writ); *Central Power & Light Company v. Martinez*, 493 S.W.2d 903 (Tex. Civ.App.—Corpus Christi 1973, no writ). An objection to the introduction of evidence, if not timely made, is waived. *Gonzales v. Texas Employers' Insurance Ass'n.*, 419 S.W.2d 203 (Tex.Civ.App.—Austin 1967,

no writ); *Guerra v. Texas Employers Insurance Ass'n.*, 343 S.W.2d 306 (Tex.Civ.App.— San Antonio 1961, no writ). An objection which is made after the evidence has already been admitted is too late. *Hix v. Wirt*, 220 S.W.2d 530 (Tex.Civ.App.—Eastland 1954, writ ref'd n. r. e.).

In the instant case, counsel for the defendant, although he did advise the court that the witness was not an adverse party to the suit, did not object to the ruling of the court at the time it was made and before the testimony of the witness was offered and received into evidence. Therefore, the error was waived by the defendant in failing to timely make a proper objection to the trial court's ruling, and to timely secure a ruling on his objection. See *Cusack v. Cusack*, 491 S.W.2d 714 (Tex.Civ. App.—Corpus Christi 1973, writ dism'd).

Because of harmless error, and, in addition, waiver of the effect of the statement by the trial court which, in effect, permitted Juan Lino Garza to testify under the adverse party rule, the defendant's contention cannot be sustained. The fourth point of error is overruled.

By his twenty-third, twenty-fourth and twenty-fifth points of error, the defendant attacks the trial court's action in allowing the plaintiff to introduce the depositions of Guadalupe Zamora and Juan Lino Garza into evidence. The defendant's deposition was read into the record over the objection of defendant that it had not been filed nor had it been reviewed by the defendant or signed by him. The deposition contained an agreement, the pertinent parts of which, read, as follows:

" . . . It was agreed by and between Counsel for Plaintiff and Defendant in the above numbered and styled cause that all formalities, including issuance of notice, are waived specifically, and . . said deposition being taken with the same force and effect as though all requirements of the statutes and rules had been fully complied with.

\*　　\*　　\*　　\*　　\*　　\*

"IT WAS FURTHER AGREED that after said deposition has been returned into Court in accordance with these stipulations and agreements, it will be treated by the parties hereto and may be used herein with the same force and effect as though all statutes and rules relating to the taking and returning into Court of depositions had been fully complied with."

It is the defendant's contention that the signing and filing requirements of the deposition were not waived by this agreement.

■ Generally speaking, unless waived, a deposition which is not signed and has not been filed in the court where the cause is docketed is not admissible at the trial. Rule 209, T.R.C.P; *Bobbie Brooks, Inc. v. Goldstein*, 567 S.W.2d 902 (Tex.Civ.App.—Eastland 1978, writ ref'd n. r. e.); *Tian v. Warren*, 271 S.W.2d 453 (Tex.Civ.App.—San Antonio 1954, writ ref'd n. r. e.).

The Texas Rules of Civil Procedure contemplated that a deposition, if it is to be used by any party at the trial, should be filed at least one day before the day on which the case is called for trial. Rule 212, T.R.C.P.

In this case, the deposition was taken in November, 1974, and was certified by the reporter who took it in July, 1975. The reporter delivered the deposition upon completion to counsel for defendant, who had physical possession of it at all pertinent times. The deposition was not filed in court until October 12, 1977, the third day of trial, when the trial judge ordered counsel for the defendant: "go, get it." The deposition was never read to the defendant and was not signed by him.

■ We hold that the signature of the defendant was waived by the agreement of the parties, and the deposition was not rendered inadmissible because the defendant had not signed it. See *Bankers Multiple Line Insurance Co. v. Gordon*, 422 S.W.2d 244 (Tex.Civ.App.—Houston [1st Dist.] 1967, no writ), and the cases cited therein, wherein it is observed that the signature of the witness to a deposition is a matter of form, and comes within the meaning of the words "to the manner of taking the same," as used in Rule 212.

■ We further hold, however, that the agreement did not waive the requirements imposed by the Rules of Civil Procedure relating to the filing of the deposition in the court in which the case was pending. The deposition in question should have been filed at least one entire day before October 10, 1977, the day on which the case was set for trial.

■ Despite the late filing of the deposition, it was admissible in evidence under the holding of *Branch v. Jean*, 320 S.W.2d 427 (Tex.Civ.App.—Eastland 1959, writ ref'd n. r. e.), and followed in *Rowntree v. Rice*, 426 S.W.2d 890 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.). In those cases, as in the instant case, the depositions which were not signed by the defendant and were not filed in accordance with the requirements of the Rules of Civil Procedure, were held to be admissible because they contained declarations against interest. The same is true in the instant case. Notwithstanding the late filing of the defendant's deposition, it was admissible since it contained admissions against interest. The deposition was properly admitted into evidence.

■ Assuming, arguendo, that it was error for the trial court to admit defendant's deposition into evidence, any such error was harmless. Rule 434, T.R.C.P. The defendant was called to testify during his own case-in-chief by his own attorney. His testimony from the witness box was basically the same then as his testimony in his deposition.

■ There was no reversible error in the plaintiff's use of Juan Lino Garza's deposition. It was used very briefly for the apparent purpose of impeaching the witness Juan Lino Garza's own live testimony. Even if there was error in admitting the portions of the deposition, we do not think its admission was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, T.R.

C.P. The twenty-third, twenty-fourth and twenty-fifth points are overruled.

The jury found: 1) at the time plaintiff was locked out of the easement until after he regained the use of the easement, he was the owner of a herd of cattle in his pasture; 2) the act of locking the plaintiff out of his pasture was a proximate cause of damages to the herd of cattle; 3) the reasonable value of the cattle at the time of the lock-out was $17,000.00; 4) the reasonable value of the cattle at the time the plaintiff regained the use of the easement was $10,000.00; 5) the reasonable cost to the plaintiff of feeding and caring for the cattle during the time he was denied access to his pasture by the defendant was $2,000.00; 6) the act of locking out the plaintiff was committed with present consciousness of invading plaintiff's rights or of exposing him to damages; 7) the plaintiff was entitled to $10,500.00 as exemplary damages. Based on those findings, judgment was rendered that the plaintiff recover $15,500.00, as damages, from the defendant, and that the defendant be permanently enjoined from interfering with the plaintiff's use of the easement. In determining the total amount of damages awarded ($15,500.00), the reasonable expense incurred by the plaintiff in feeding his cattle during the time of the lock-out ($2,000.00) and the reasonable value of the cattle at the time the plaintiff regained the use of the easement ($10,000.00) are deducted from the reasonable value of the cattle at the time of the lock-out ($17,000.00), which results in the amount of $5,000.00; added thereto is $10,500.00 for exemplary damages for a total award of $15,500.00.

The above jury findings are attacked by the defendant in seventeen points of error. Such attack is predicated on "no evidence," or contrary to the "undisputed evidence" or "against the great weight and preponderance of the evidence" points. We follow the well established rules in disposing of those points. See Calvert, "No Evidence" and "Insufficient Evidence," 38 Texas L.Rev. 359 (1960).

The undisputed evidence revealed that the plaintiff owned a herd of cattle in the pasture involved at the time he was locked out of the easement by the defendant. The herd numbered 85 animals.

The defendant's contention was that the plaintiff had reasonable access into his property from other sources during the period the easement was obstructed and therefore did not sustain any damages. To support his contention, the defendant has pointed us to evidence that the plaintiff had been given permission to cross over his neighbor's (Bortolo Salinas's) property in order to reach his own property to feed his cattle. The defendant refers us to the evidence that the plaintiff's son actually visited the "locked-out" tract on more than one occasion to feed the cattle in the particular pasture. Furthermore, the cattle were also fed from September to December of 1973, by a Vicente Saenz pursuant to plaintiff's request. Examining the record as a whole, however, we find ample support for the jury's finding that plaintiff did not have an entry way into his pasture at all times as needed. The plaintiff testified that trespassing upon defendant's land would have been necessary even had he chosen to accept his neighbor's offer. Furthermore, he was apprehensive of danger because of information he apparently had that defendant could be violent. The plaintiff's son testified that some of his visits to their pasture involved trespassing upon defendant's land, and that in doing this he had to act as his own beast of burden by carrying bales of hay by hand to the cattle.

There is abundant evidence in the record which supports the jury's finding that the reasonable market value of the herd of cattle at the time plaintiff was locked-out was $17,000.00. It is, first of all, undisputed that plaintiff had 85 head grazing on the 100 acre tract at the time defendant locked the gate. Next, there was testimony that the herd consisted of two bulls valued at $300.00 to $350.00 each, five or six calves valued at around $100.00 each, ten to twelve 6 month old animals valued at around $225.00 each, six or seven yearlings

valued at around $175.00 each and about fifty-eight mother cows valued at approximately $250.00 each. Totalling these figures, we find that the jury's figure of $17,000.00 was, if anything, conservative.

There is also abundant evidence which supports the jury's finding that the reasonable value of the herd of cattle at the time the plaintiff regained the use of the easement was only $10,000.00. Vicente Saenz testified there were 65 head of cattle left alive by the time the gate was unlocked. Both bulls had died. The calves were worth about $100.00 each; the yearlings were worth about $215.00 each; the cows were worth about $150.00 each; and the remaining animals were worth about $200.00 each. The total of these figures approximates $10,200.00. The jury, however, would have been justified in reaching a figure even lower than $10,000.00 because of evidence that the animals were extremely weak and in "pretty bad shape."

The finding that the reasonable cost of feeding the cattle during the time that the plaintiff was denied access to the pasture where the herd was located amounted to $2,000.00 is amply supported by the evidence. Plaintiff's son hauled some 450 bales of hay to the 100 acre tract during the lock-out. It normally would have taken from 1,500 to 2,000 bales to support the herd. The price per bale at the time was around $1.25.

We have carefully reviewed, considered and weighed all of the evidence pertaining to the jury's answers which have been challenged on evidentiary grounds. There is substantial evidence of probative force to sustain each finding. None of the questioned findings are against the great weight and preponderance of the evidence. The seventeen evidentiary points of error (points 6 through 22) are overruled.

Finally, the defendant, in his fifth point of error, contends that the trial court erred in overruling his objection to the plaintiff's jury argument and accompanying motion for mistrial. In the plaintiff's argument to the jury he referred to the defendant in the following manner.

" . . . He has acquired, what is the evidence? Anywhere from thirteen to seventeen thousand acres; . . . "

The defendant did not object to that statement immediately following its being made. The complaint, was, therefore, waived. A few moments later, the following exchange took place:

"I (MR. BECKMAN, counsel for the plaintiff) will close this opening portion of my statement by suggesting to you that the wrong done to Mr. Romero was a serious one, and that the punishment and damages, the exemplary damages that you assess against Mr. Zamora be substantial. A few thousand dollars is not going to mean anything to Mr. Zamora

. . .

MR. WILKINS (counsel for the defendant) I object to that line of testimony on the grounds that it tries to contrast the relative wealth and importance of the Defendant, and his arguments can't help but prejudice the jury, and we ask for a mistrial at this time.

THE COURT: Objection is overruled, mistrial overruled. Ladies and Gentlemen, I want to tell you again that what these lawyers say is not evidence. You be the judge of the evidence, and again read the instructions as it relates, if any, to the particular question that it relates to."

It is the defendant's contention that this was improper jury argument because it prejudiced the jury by contrasting the relative wealth and importance of the defendant. We disagree.

It is well settled that attorneys are permitted considerable latitude in jury argument. *Hartford Acc. & Indem. Co. v. Thurmond,* 527 S.W.2d 180 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Fulmer v. Thompson,* 573 S.W.2d 256 (Tex. Civ.App.—Tyler 1978, writ ref'd n. r. e.). It is not error for counsel to tell the jurors what they already know. *Green v. Hudson Engineering Corp.,* 305 S.W.2d 201 (Tex.Civ. App.—Fort Worth 1957, writ ref'd n. r. e.). The jurors in the case at bar knew that the

defendant was a large landowner. They also knew that one of the purposes of exemplary damages is to punish the wrongdoer. Moreover, assuming that the argument was improper, any harm resulting therefrom was removed by the court's instruction to the jury. The award of $10,500.00 as exemplary damages is not attacked by a point of error and no point suggesting a remittitur has been brought forward. Reversible error is not shown because of improper jury argument. The fifth point is overruled.

The judgment of the trial court is AFFIRMED.