**Tommy M. AUXIER & Hannelore Auxier, Appellants,**

v.

**GOVERNMENT EMPLOYEES CREDIT UNION, Appellee.**

No. 04–86–00609–CV.

Court of Appeals of Texas, San Antonio.

July 15, 1987.

———

Allen Cazier, Barbour & Cazier, San Antonio, for appellants.

Ronald R. Flake, Universal City, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

BUTTS, Justice.

This is a breach of contract suit. Appellants, Tommy M. and Hannelore I. Auxier sued Government Employees Credit Union of San Antonio (G.E.C.U.) to recover damages because of G.E.C.U.'s refusal to fund a loan to the Auxiers. The case was tried before a jury which failed to find in a special issue that the Auxiers were "ready, willing and able to perform under the loan commitment." In another special issue the jury failed to find that G.E.C.U. "improperly refused to fund the $92,000.00 construction loan to Plaintiffs [the Auxiers]." The Auxiers bring three points of error, the third one stating that their motion for new trial should have been granted because the

two noted jury findings were contrary to the overwhelming weight and preponderance of the evidence.

In May, 1983, the Auxiers, who owned appropriately zoned real estate, applied to G.E.C.U. for a loan of $92,000.00 to construct duplex apartments. A loan officer advised as to requirements needed to begin the process including costs projections. In July, another loan officer, Wally Fields, was assigned to work with the Auxiers. He requested blueprints for the city's approval. Two letters were sent to the Auxiers on August 1, 1983, one headed RE: Construction Loan Commitment and the other, RE: Mini-Permanent Loan Commitment. The Auxiers were advanced the sum of $26,000.00 at that time to begin the construction project. In October, 1983, they received a letter from G.E.C.U. stating that the bank declined the construction loan on the project because an appraisal indicated the construction costs of the units would be over $300,000.00 and not $120,-000.00 as the Auxiers contemplated. Auxier was told by a G.E.C.U. official that he had failed to meet his commitment, that the loan was not feasible. G.E.C.U. requested the return of the $26,000.00 advance.

Auxier testified that with the advanced money he purchased bell saw planers, but he "tore them up," because he did not know how to use them. Two persons that he brought from Hempsted and supported with some of the loan funds "got disgusted" after Auxier received the October refusal letter and left for other work. This builder friend (Billy), his wife, Auxier's two sons, and his wife were the ones who were going to build the apartments. Auxier testified that he set fire to and burned some lumber he had purchased with part of the money (about $15,000.00). He considered it ruined because it was rain-soaked as the result of improper storage. Further, that on a construction-related trip he wrecked (totaled) a truck and trailer obtained through these funds. He also testified he had not secured bids for the flatwork or landscaping, nor did he have a budget set up. He did not understand that interest was due monthly, nor that G.E.C.U. charged a fee for making the loan. He

agreed he had made no plans for mortgagee's title insurance, landscaping, a bond, or an itemized list of furnishings, fixtures and equipment, which were all required by the commitment letter. He further stated that his request for a like loan was rejected by two other lenders.

Fields, no longer employed by G.E.C.U. as a loan officer, was called as a witness by Auxier. He testified that the loan commitment was conditioned upon a satisfactory appraisal; in his opinion other loan officers acted reasonably in rejecting the loan. The appraiser, also called by Auxier, stated that in his opinion the project could not have been built for the cost anticipated by Auxier. Two loan officers called as witnesses by G.E.C.U. testified that the procedures followed by it were normal and not unusual.

To review factual sufficiency of the evidence we consider and weigh all the evidence in the case and set aside the judgment if we conclude the judgment is clearly wrong. *See, In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). When the challenge is that the jury's answers are against the great weight and preponderance of the evidence, this Court may set aside the verdict and remand the cause for a new trial only if it concludes the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361 (1960). After examining the evidence in this case and applying the required standard, we overrule the third point of error.

During cross-examination of Auxier, counsel for G.E.C.U. read from the deposition testimony of Gloria Tidwell, a former loan officer of G.E.C.U., who Auxier asserted told him the loan had been finally approved and the matter would be successfully finalized. He had earlier testified Tidwell told him, in effect, everything had been done and approved except the paperwork. When he tried to obtain an explanation from her for the refusal, his attempts to see her were unsuccessful. However, he did state that he talked with the person

**400**

in charge of G.E.C.U. who told him he had not met his conditions of commitment.

A motion was made to strike the deposition, which was incomplete because Tidwell balked at giving her address, stating that she had been harassed by Auxier since she left the employ of G.E.C.U. She refused to be cross-examined. The pretrial motion was denied. Point of error one addresses error in denying the motion to strike the deposition, while point of error two addresses error in admission of the deposition testimony into evidence because it was never filed as required.

It is clear that the Auxiers were deprived of their right to cross-examine Tidwell; however, their only act concerning the aborted deposition was to urge the pre-trial motion. At the time the deposition had not been filed, nor was there any indication it would be utilized at trial. Moreover, it is clear that the disputed deposition was not filed in the cause at any time. TEX.R. CIV.P., Rules 206 and 207 govern procedures applying to depositions to be filed or on file. The rules have no application where there is no filed deposition at trial.

There was no objection to the reading of Tidwell's deposition at trial. An objection to the use of the unfiled deposition for impeachment purposes was not made. Auxier was asked to read parts of it also, and he complied without objection. Auxier thereafter read lines of Tidwell's testimony telling him the loan was approved provided he had fulfilled his commitment. Further, her statement was read that the loan was approved per specific conditions being met. Without a timely objection to the admission of the deposition testimony, error, if any, was not preserved for appellate review. *Zamora v. Romero*, 581 S.W.2d 742, 747 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Moreover, the testimony was merely cumulative of other evidence. Points of error one and two are overruled.

The judgment is affirmed.