**Melvin Doyle AUSTIN and Hobson Big Boy Farms, Appellants,**

v.

**Douglas W. SHAMPINE, Appellee.**

No. 06–96–00110–CV.

Court of Appeals of Texas, Texarkana.

Argued June 3, 1997.

Decided June 13, 1997.

Rehearing Overruled July 1, 1997.

902

Stephen G. Good, George S. McCall, Kern and Wooley, Irving, for appellants.

Larry Cain, Shain Chapman, Law Office of Larry Cain, Sherman, Jim J. Hatcher, Gainesville, David C. Turner, Jr., Bonham, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Melvin Doyle Austin ("Austin") and Hobson Big Boy Farms ("Big Boy") appeal from a judgment awarding $694,620.00 to Douglas W. Shampine ("Shampine") for damages incurred in an automobile accident. Trial was to a jury, which found total damages of $1,362,000.00 and apportioned 51% of the fault to Austin and 49% to Shampine. Austin and Big Boy bring eleven points of error, contending that (1) Shampine's closing statement included improper and incurably prejudicial arguments; (2) the trial court erroneously permitted Shampine to reference deposition testimony not in evidence during the cross-examination of witnesses and during closing argument; (3) the trial court erroneously permitted Shampine to amend his pleadings during trial; and (4) the evidence was legally and factually insufficient to support the amount of damages found. We affirm the judgment.

Shampine was an avid fisherman. He particularly enjoyed entering bass fishing tournaments. In 1992, when Shampine was forty-seven years old, he performed well at several qualifying tournaments. Therefore, he qualified to enter a championship tournament in Kentucky. The tournament required that every fisherman bring an observer, who would monitor other competitors to prevent cheating. Shampine recruited Warren Edward Smith ("Smith") to be his observer.

Shampine and Smith both worked for Weber Aircraft ("Weber") in Gainesville, Texas, a company that manufactures seats for airline companies. Around 4:00 a.m. on November 3, 1992, Shampine and Smith left for Kentucky in Shampine's pickup truck, towing a bass boat. Shampine was driving. He proceeded east on Highway 82 from Gainesville to Sherman. He then took Highway 56 to Bells, where he turned south on Highway 69, headed to Greenville.

Around 5:00 a.m., Shampine and Smith were about one-half mile south of Leonard in southern Fannin County. It was very dark, and the road was unlighted. Shampine and Smith both testified that they observed an unlighted silhouette on the road ahead of them. Shampine took his foot off the accelerator. Then the two men saw wheels on a trailer immediately in front of them. Shampine braked and swerved to the right, but could not get around the trailer, which was blocking the entire road. Shampine's truck slammed into the trailer.

The trailer was hooked to a truck being driven by Austin, an employee of Big Boy. Austin's total rig was fifty-nine feet long. On the night of November 3, 1992, Austin was hauling timber from Idabel, Oklahoma, to a ladder factory in Leonard, Texas. When he arrived in Leonard, Austin did not know how to get to the ladder factory. However, pursuant to instructions that he obtained over the CB radio, Austin turned down a dirt road south of Leonard. Austin did not see the ladder company on the road, so he turned around and drove back to the intersection of the dirt road and Highway 69. Austin intended to drive to Leonard, to ask for directions. In order to proceed back to Leon-

ard, he had to make a very sharp left turn from the dirt road onto Highway 69.

When he reached the intersection, Austin looked to his left and saw headlights down the highway, between Leonard and the intersection. He knew that it would take twenty to twenty-five seconds to complete the turn onto Highway 69; however, he decided that he could turn safely. Halfway into his turn, Austin's trailer was struck by Shampine's truck.

The parties disagree about the exact location of Austin's trailer at the time of the accident. Specifically, Shampine contends that Austin's trailer extended all the way to the guardrail on Shampine's side of the road, whereas Austin and Big Boy claim that Shampine could have swerved around on the shoulder. Austin and Big Boy dispute Shampine's claim that he was blocked on the right by a guardrail. Austin and Big Boy's expert testified that the accident occurred twenty feet beyond the end of the guardrail. After the accident, Smith was able to exit the pickup truck. However, Shampine was trapped in the truck for about thirty minutes. After he was rescued, he was hospitalized for a variety of injuries. Neither Austin nor Smith was seriously injured.

Donald Wayne Walker, Jr. ("Walker"), who was an officer with the Leonard Police Department, arrived on the scene at 5:26 a.m. He prepared an accident report, which listed only one cause of the accident-Austin's failure to yield the right of way. Walker left this report on the desk of his supervisor, Steven Logan ("Logan"). Logan filled out a second accident report, placing most of the blame on Shampine. Although the second report includes Walker's signature, Walker does not remember the second report.

Shampine and Smith sued Austin and Big Boy for damages incurred as a result of the accident. At one point, Shampine and Smith also sued Floy Pratt Hobson, as representative of the estate of Lloyd Hobson. However, all claims against Floy Pratt Hobson were dismissed with prejudice. By the time the case went to trial, Smith was no longer participating as a plaintiff, for reasons not revealed by the record.

Logan was Austin and Big Boy's principal witness. Logan testified that the accident was caused by Shampine's speeding, failure to swerve around the trailer, and inattention. Shampine and Smith denied speeding. They insisted that they saw no lights on the tractor-trailer and so could not avoid the accident. Shampine presented evidence that Austin's headlights were not pointed toward Shampine when Austin was making the turn and that if there were lights on the trailer, they were obscured by mud.

The jury concluded that Austin was 51% responsible for the accident and that Shampine was 49% responsible for the accident. The jury found the following damages:

| | |
|---|---|
| past physical pain and mental anguish | $150,000.00 |
| past loss of earnings | $ 0.00 |
| past physical impairment | $100,000.00 |
| past medical care | $ 37,000.00 |
| future physical pain and mental anguish | $400,000.00 |
| future loss of earnings | $300,000.00 |
| future physical impairment | $300,000.00 |
| future medical care | $ 75,000.00 |

Total damages equaled $1,362,000.00. The amount attributable to Austin's negligence was $694,620.00. The final judgment awarded Shampine $694,620.00 from Austin and Big Boy and Floy Pratt Hobson. The reference to Floy Pratt Hobson was apparently a mistake. Big Boy's liability is premised on *respondeat superior.*

## I.

### Incurable Jury Argument

Austin and Big Boy's first two points of error complain that much of Shampine's closing argument was improper. Austin and Big Boy specifically point out the following passages:

Now, the truck company comes down and gets to Mr. Logan. Mr. Logan then goes out for the trucking company, and—I think he did, and I think you can draw—there is no evidence that he went out with the trucking company—but I think you can draw legal conclusions—or not legal, but conclusions from the evidence. I think Mr. Logan got out with the trucking company, and then he changed the whole thing, signed Mr. Walker's name to it, which Mr. Walker said, I didn't sign it, signed Mr. Walker's name to it, and this is what that they are relying on.

. . . .

The defendant in this case is Hobson Big Boy Trucking Company, who is not here. The vacant chair, they didn't even think enough of the case to even come down here. Not even think enough of the case to come down here. A vacant chair right there is what you can see, that's Mr. Austin—I mean, Mr. Hobson. I know Mr. Hobson is dead. I understand that, and I'm sorry about that. But this case is against Hobson Big Boy Trucking Company. . . .

. . . .

[T]hese lawyers from Dallas, these guys, they do business up in these tall buildings out in Las Colinas, you know, they flew [Logan] all the way down here from Nashville, Tennessee. I guess they have some kind of unlimited budget.

. . . .

I wondered why these high-paid lawyers from Las Colinas didn't bring that high-paid expert down here to tell you how the cow ate the cabbage.

. . . .

Now, I've seen some weak defenses, but this one takes the cake. This one goes beyond the bounds of reasonableness. . . .

. . . .

The thing that kept running through my mind through all of this trial, corporate America has no soul. This trucking company has gone to incredible lengths to try not to take responsibility for what their employee did. . . . There is something fishy going on here, ladies and gentlemen, looks like to me.

The trucking company is down there. Somebody came down. It was one of Mr. Hobson's grandsons, and somebody Mr. Austin didn't even know. Okay. And the trucking company is down here fooling with the evidence, it looks to me like.

. . . .

[E]verybody is opposed to frivolous lawsuits, me included. I know every one of you are. . . . And if I have ever seen a corrupt or—and frivolous defense in twenty-five years of trying lawsuits, this is it.

Austin and Big Boy claim that Shampine's arguments present an unfounded conspiracy theory. Austin and Big Boy note that Shampine argued that Big Boy and Logan conspired to place the blame on Shampine. Austin and Big Boy assert that the conspiracy theory is particularly unfair because Big Boy is not a party to the suit. This assertion is unfounded. Every document in the record lists Big Boy as a party. There is no record indicating that Big Boy was ever dropped from the suit. Big Boy is listed as a responsible party in the final judgment. Even Austin and Big Boy's brief purports to appeal on behalf of Big Boy.

■■■ Austin and Big Boy did not object to any of the arguments set forth above. Austin and Big Boy therefore contend that the arguments were incurable.

> To preserve error on curable argument, counsel must object and request the court to instruct the jury to disregard the argument. Objection is not required in the case of incurable argument, however, which is argument so inflammatory that its harmful or prejudicial nature cannot be cured by an instruction to disregard.

*Texas Employers Ins. Ass'n v. Puckett*, 822 S.W.2d 133, 135 (Tex.App.—Houston [1st Dist.] 1991, writ denied). To complain on appeal of incurable jury argument not otherwise ruled upon by the trial court, an appellant must have presented the complaint in a motion for new trial. TEX.R. CIV. P. 324(b)(5). Austin and Big Boy's motion for new trial complained only that Shampine's argument described Austin and Big Boy as "corrupt." Austin and Big Boy have therefore waived any complaint concerning the other arguments set forth above.

■■■ Austin and Big Boy argue that the reference to a corrupt defense necessarily references Shampine's conspiracy theory. Additionally, Austin and Big Boy regard the word "corrupt" as a vile epithet intended to demonize Austin and Big Boy's counsel. Shampine contends that his counsel merely was trying to say that Austin and Big Boy had presented a weak defense. Shampine also contends that counsel "simply misspoke the word 'corrupt' when he meant to use 'frivolous' in discussing Appellants' basis of defense. He immediately corrected himself." Alternatively, Shampine argues that Austin and Big Boy *were* corrupt because they conspired with Logan to place the blame on Shampine. However, there is no evidence supporting Shampine's conspiracy theory. "Counsel ... may discuss the reasonableness or unreasonableness of the evidence and its probative effect or lack of probative effect; but such latitude extends only to the facts and issues raised by the evidence in the case." *Ramirez v. Acker,* 134 Tex. 647, 138 S.W.2d 1054, 1055 (1940). "Counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel." TEX.R. CIV. P. 269(e).

Austin and Big Boy dedicate a substantial portion of their brief to discussing the inherently poisonous nature of the word "corrupt." However, this exercise is wasted unless we know in what sense Shampine's counsel used the word "corrupt." Therefore, we will examine the context in which the word "corrupt" was used. The word "corrupt" appears *after* the discussion of the conspiracy theory was complete. In fact, the word is used during a general discussion of Austin and Big Boy's case:

> You know, Mr. Hatcher mentioned frivolous lawsuits, you know, and asked you about it, and everybody is opposed to frivolous lawsuits, me included. I know every one of you are. And he also asked you about frivolous defenses. Okay. Did you—were you opposed to frivolous defenses, whether you might be opposed to frivolous lawsuits, and I think everybody is. And if I have ever seen a corrupt or—and frivolous defense in twenty-five years of trying lawsuits, this is it. Okay. And you—you know, you don't have to—you don't have to be a lawyer, or you don't have to be—to look at this and see what the evidence is.

■■■ In order to determine whether this argument is incurable, the court must ascertain how prejudicial the argument is.

> The true test [for incurability] is the degree of prejudice flowing from the argument-whether the argument, considered in its proper setting, was reasonably calculated to cause such prejudice to the opposing

litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. *Texas Employers' Ins. Ass'n v. Haywood,* 153 Tex. 242, 266 S.W.2d 856, 858 (1954). "There are only rare instances of incurable harm from improper argument." *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839 (Tex.1979). Additionally, even if an argument is incurable, reversal is required only if the argument was harmful. Tex.R.App. P. 81(b)(1), 184(b); *Lumbermen's Lloyds v. Loper,* 153 Tex. 404, 269 S.W.2d 367, 370–71 (1954) (finding an argument incurable but harmless). "All of the evidence must be closely examined to determine the argument's probable effect on a material finding, and a reversal must come from an evaluation of the whole case." *Rainbow Express, Inc. v. Unkenholz,* 780 S.W.2d 427, 433 (Tex. App.—Texarkana 1989, writ denied). In other words, a reviewing court will reverse if the probability that the argument caused harm exceeds the probability that the verdict was based upon proper proceedings and evidence. *Haryanto v. Saeed,* 860 S.W.2d 913, 919 (Tex. App.—Houston [14th Dist.] 1993, writ denied). "In making this determination, the reviewing court may properly inquire into the duration of the argument, whether it was repeated or abandoned, and whether there was cumulative error." *Williams v. Lavender,* 797 S.W.2d 410, 413 (Tex.App.—Fort Worth 1990, writ denied).

Shampine's argument was not incurably improper. It was the fleeting, unrepeated use of a strong word in the midst of a proper argument that Austin and Big Boy's defense was weak. Austin and Big Boy have not presented any evidence that the allegation of corruption-the only properly preserved complaint-has any relation to Shampine's more questionable intimations of conspiracy. Furthermore, there is no indication that the mere utterance of the word "corrupt" affected the outcome of the case. Therefore, the first two points of error are overruled.

## II.

### The Deposition Testimony of Mike Andrews

Points of error three through six complain that the trial court erroneously permitted Shampine to reference the deposition testimony of Mike Andrews, an expert hired by Austin and Big Boy, who was never called to testify.

Austin and Big Boy's response to Shampine's interrogatories listed Mike Andrews as a potential witness concerning "[t]ime and distance measurements and opinions concerning the actions of the parties, causation and fault in connection with the alleged accident." Before trial, Austin and Big Boy filed motions in limine to preclude mention of several matters, including:

That Defendants have not called to testify any witness equally available to the parties in this cause. In this connection, Defendants move that Plaintiffs' counsel and all witnesses be instructed not to suggest to the jury by argument or otherwise what would have been the testimony of any witness not actually called....

. . . .

Any comment upon the failure of either party to call witnesses that are subject to subpoena and available to both parties in this cause....

Further, that Plaintiffs not mention or state to the jury the probable testimony of a witness who is absent, unavailable, or not called to testify in this cause.

Before voir dire, the court held a hearing on the motions in limine. The court asked Shampine to "[t]ell me the ones you question on the defendants' and then we'll sustain all the rest of them." Shampine did not mention the paragraphs set forth above. Someone has checked "sustained" underneath each of these paragraphs. However, the record contains no order granting these motions.

In his opening statement, Shampine's counsel mentioned Andrews:

And the odd thing about this case is expert witnesses ordinarily say it's the fault of the other side. In this case, and this is one of the things on this road map I want you to watch for, they have an expert that they hired named Andrews, and he's a Dr. Andrews, by the way, Ph.D. I took his

deposition last week, and Dr. Andrews said that this wreck happened because Mr. Austin failed to yield right of way at this stop sign. Now, if he doesn't say that in his deposition, and I don't prove it to you that he said that in his deposition by reading it to you or by putting him on this witness stand and cross-examining, hold my feet to the fire. I guarantee you that's what he said last week. That's their expert.

Austin and Big Boy's counsel responded in his opening statement:

Now, Mr. Cain talks about Dr. Andrews. Dr. Andrews is an expert of ours, he's a Ph.D. He knows about time and distance measurements. He's a math whiz, and he can talk to you about angles and distances, he can talk to you about speeds, impact, forces and things like that. It's correct that in deposition he told Mr. Cain in hindsight that Mr. Austin was in the wrong place at the wrong time, and he failed to yield right of way because his truck was still across that highway when Mr. Shampine came along. But what Dr. Andrews, I expect, will testify is that the accident occurred due to driver inattention....

Shampine later introduced a drawing of the accident scene made by Andrews, without objection from Austin and Big Boy. Shampine also introduced two pictures of the accident scene from Andrews' file. The next mention of Andrews came during Shampine's cross-examination of Austin:

Q Okay. Well, let me ask you this. Let's just cut right down to a real important thing. You hired an expert to—you and your trucking—and this trucking company that stands behind you, Big Boy Trucking Company of Oklahoma, whether or not it's still in existence, and these lawyers out of Dallas, on your behalf, hired an expert, his name is Andrews; is that right?

A I don't—I never met the man. I don't know.

Q Well, you mean, you have got an expert representing you in this case and you have never even talked to him?

A I don't know the man. Have I met him?

Q Well, let me—let me put it this way. If an expert was going to come into the courtroom and give opinions about a case, wouldn't it be a good idea to talk to the people that were involved in the accident?

A I don't know. I've never been in a courtroom before in my life.

Q I know it, but doesn't it make common sense that an expert might want to gather up all the facts he could, and one of those might be from talking to you, the guy that was involved in the wreck?

A Might be.

Q He never has talked to you, has he?

A No, sir.

Q You never have talked to him?

A No, sir.

Q Well, let me just ask you if you would agree with him that he's when he says that—

MR. GOOD: Objection, Your Honor. He's about to read hearsay into the record.

MR. CAIN: I'm going to ask if he agrees with his own expert.

THE COURT: Sustain the objection.

Q (Mr. Cain) Let me ask you to assume, Mr. Austin, that the expert hired on your behalf, behalf of the trucking company that you worked for, and by these lawyers down here, has given a deposition and that he has given an opinion that says that you failed to yield right of way—

MR. GOOD: Objection, Your Honor. He's trying to enter hearsay into the record.

THE COURT: Sustained.

After Austin's testimony, Shampine asked to read portions of Andrews' deposition testimony into the record. Austin and Big Boy objected, arguing that Shampine had not identified Andrews as a witness and that the evidence would be hearsay. After the objection, Shampine essentially withdrew his request to read Andrews' testimony. The court never ruled on the request.

When Austin resumed the stand, Shampine asked him if he disagreed with Andrews. Austin would only admit disagreeing with

Andrews' drawing. Later, Shampine asked Austin if he knew and hired Andrews. Austin denied knowing or hiring Andrews.

Later, Shampine cross-examined Logan concerning an apparent discrepancy between his testimony and Andrews' drawing. Logan had testified that the accident occurred twenty feet beyond the guardrail, while Andrews' drawing shows that the accident occurred just beyond the guardrail. Shampine asked Logan whether he had reviewed Andrews' deposition. Then Shampine asked whether Logan knew that Austin and Big Boy had hired Andrews. Austin and Big Boy objected that this question was irrelevant, but the objection was overruled. Logan admitted that he did not know about Andrews, but he did not concede that Andrews' drawing greatly contradicted his testimony.

A short time later, a quarrel erupted over Shampine's references to Andrews. Shampine asked Logan if Austin and Big Boy told him that Andrews' testimony was "totally contrary" to his own. The judge overruled an objection to this question, and Logan answered "No." The parties then discussed again the propriety of Shampine's reading portions of Andrews' testimony to the jury. Again, the court did not make an explicit ruling concerning whether Shampine could read portions of the deposition to the jury. Shortly thereafter, the court permitted Shampine to ask Logan: "Would it surprise you, Officer, that the expert said that Mr. Austin saw Shampine coming way back up the road before he decided to pull out of the intersection?" Logan responded that he did not understand the question. Shampine moved on, then returned to the subject, asking, "Officer, would it surprise you that the expert that was hired in this case, by the lawyers for the defendant trucking company, said that their client was in the wrong because he failed to yield right of way? Would that surprise you?" Logan responded that he would not be surprised because even his own report conceded that Austin failed to yield the right of way.

Shampine mentioned Andrews twice during his opening argument:

Are all the pictures here?

This came from their expert's file.

. . . .

Now—and I want one of these lawyers to get up, when they give the argument to you, and I want them to tell you why they didn't call their reconstruction expert. I'll tell you why. They didn't call him because he is directly in conflict of everything Logan said and what Austin said. That's why they didn't call him.

Another thing, we introduced, out of this expert report, which you take this back with you also, where the point of impact was. Doug Shampine, they say he couldn't go to the right. Even Logan had to admit later on he don't think he would go to the right. But this is out of their expert's opinion. This is out of their expert's file as to what happened.

Austin and Big Boy did not object to either of these statements, but they responded during their closing statement that they did not call Andrews because they needed only to present one expert's testimony.

The last mention of Andrews came during Shampine's rebuttal argument. First, Shampine stated that Logan "was here in the place of Dr. Ph.D. Mike Andrews. This is how much testimony Dr. Andrews gave." Austin and Big Boy objected: "Your Honor, we would object to counsel holding up documents in front of the jury that aren't admitted into evidence, depositions that aren't admitted into evidence, and to making arguments about matters which aren't in evidence." The court overruled the objection. Shampine continued:

You will remember yesterday afternoon, when this Leonard police officer that came from Chattanooga, Tennessee, was sitting up here and he was asked, Would you be surprised if a paid Ph.D. expert from down in Dallas, that these people hired, disagreed with you about fault and put fault on that man right over there? Remember that? I wondered what happened to this man, this Ph.D. I wondered why these high-paid lawyers from Las Colinas didn't bring that high-paid expert down here to tell you how the cow ate the cabbage. You know why? I think you can probably figure it out if you think about it long enough.

Would it surprise you that he put fault on Mr. Austin with what this lawyer—

At that point, Austin and Big Boy objected. The objection was sustained. Austin and Big Boy did not request an instruction to disregard Shampine's argument.

On appeal, Austin and Big Boy do not complain about every mention of Andrews. Instead, point of error three argues that Shampine's counsel engaged in improper argument when he stated that Andrews' deposition "put fault" on Austin. Point four argues that Shampine's counsel engaged in improper argument by holding up Andrews' deposition and stating, "This is how much testimony Dr. Andrews gave." Point five complains that the trial court erroneously permitted Shampine to introduce hearsay concerning Andrews' opinions at various places in the record. Point six argues that the trial court erroneously permitted Shampine to violate the motions in limine by referring to Andrews at various places in the record.

A. *Improper Argument Andrews "Put Fault" on Austin*

 It is generally improper to refer to matters outside the record during argument. Tex.R. Civ. P. 269(e); *Ramirez v. Acker,* 138 S.W.2d at 1055. Shampine contends that Andrews' conclusions were not outside the record because the court permitted him to ask Logan about them. However, Logan never conceded that Andrews' conclusions were adverse to Austin. Shampine's questions are not, by themselves, evidence of Andrews' opinions. "[R]emarks by attorneys during the course of trial do not constitute evidence unless the attorney is actually giving testimony." *Sunrizon Homes, Inc. v. Fuller,* 747 S.W.2d 530, 533 (Tex.App.—San Antonio 1988, writ denied).

 Because Austin and Big Boy did not request an instruction to disregard, they are not entitled to reversal unless Shampine's argument was incurable. *Texas Employers Ins. Ass'n v. Puckett,* 822 S.W.2d at 135. "Argument outside the record is ordinarily

curable...." *Haryanto v. Saeed,* 860 S.W.2d at 921; *see Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 333 (Tex.1968); *Wagner & Brown v. E.W. Moran Drilling Co.,* 702 S.W.2d 760, 770–71 (Tex.App.—Fort Worth 1986, no writ); *Plains Ins. Co. v. Evans,* 692 S.W.2d 952, 958 (Tex.App.—Fort Worth 1985, no writ) (all concluding that arguments outside the record were curable). Therefore, this point of error is overruled.

 Additionally, the improper argument was harmless. Improper argument is not prejudicial if it informs the jury of something it already knows. *Zamora v. Romero,* 581 S.W.2d 742, 750 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.); *Dallas County v. Romans,* 563 S.W.2d 827, 831 (Tex.Civ. App.—Tyler 1978, no writ). For example, in *Williams v. Lavender,* 797 S.W.2d 410, 413–14 (Tex.App.—Fort Worth 1990, writ denied), the Fort Worth court held that it was not harmful error for counsel to reference a fact not in evidence, if the fact was revealed in voir dire. In this case, Austin and Big Boy's counsel told the jury during opening statements that Andrews placed some of the fault on Austin. Therefore, the jury was aware that Andrews put at least some fault on Austin. Perhaps the jury could have inferred from Shampine's argument that Andrews put all of the fault on Austin. However, Shampine's argument was cut off by Austin and Big Boy's objection. Therefore, Shampine was unable to inform the jury to what extent Andrews put fault on Austin. As a result, Shampine's argument did not go beyond Austin and Big Boy's opening statement. Therefore, the third point of error is overruled.

B. *Improper Argument Holding Up Andrews' Deposition*

Austin and Big Boy contend that Shampine improperly argued evidence outside the record when he displayed Andrews' deposition and stated, "This is how much testimony Dr. Andrews gave."[1] This argument was

---

1. Of course, the record does not directly indicate that Shampine held up the deposition before the jury. However, during the discussions concerning Austin and Big Boy's objection, the trial judge and both counsel made references to Shampine's "holding up" the deposition.

preserved by an objection, which was overruled by the trial judge.

 Shampine claims that his argument was a proper comment on Austin and Big Boy's failure to call a witness under their control. However, for purposes of this point of error, we need not inquire into the propriety of Shampine's pointing out Andrews' absence. Instead, Austin and Big Boy complain that it was improper for Shampine to use the deposition as an exhibit to illustrate Andrews' absence. As noted above, it is improper to argue outside the record. The deposition was not in evidence. Therefore, it was improper for Shampine to use Andrews' deposition as an exhibit during closing argument. However, the impropriety was harmless error. It merely illustrated that Andrews existed, that he gave a deposition, and that he did not testify. The jury already knew from the opening statements, including Austin and Big Boy's, that Andrews existed and that he gave a deposition. The jury also knew that Andrews did not testify. Austin and Big Boy were not harmed by the exhibition of Andrews' deposition. *Williams v. Lavender*, 797 S.W.2d at 413–14; *Zamora v. Romero*, 581 S.W.2d at 750; *Dallas County v. Romans*, 563 S.W.2d at 831. The fourth point of error is overruled.

## C. *Hearsay*

Austin and Big Boy complain that on several occasions the trial court permitted Shampine to introduce inadmissible hearsay from Andrews' deposition. TEX.R. CIV. EVID. 801(d) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." "A 'statement' is (1) an oral or written verbal expression or (2) nonverbal conduct of a person, if it is intended by him as a substitute for verbal expression." TEX.R. CIV. EVID. 801(a).

During the first occasion of which Austin and Big Boy complain, Shampine asked Logan whether he had looked at Andrews' deposition. Austin and Big Boy did not object. Logan responded that he had not looked at the deposition. Shampine then asked Logan whether he knew that Austin

and Big Boy had hired a reconstruction expert (presumably Andrews). Austin and Big Boy objected that the question was irrelevant. Logan responded that he did not know about Andrews. Then, Shampine cross-examined Logan concerning Andrews' drawing of the accident scene, which had been admitted without objection by Austin and Big Boy. Austin and Big Boy did not object to this cross-examination.

 Austin and Big Boy made no hearsay objection during this exchange with Austin, and since Shampine did not attempt to introduce hearsay during this exchange, any objection on that basis would have been without merit. Furthermore, complaints and argument on appeal must correspond with the complaint made at the trial court level. *See* TEX.R.APP. P. 52(a); *Borden, Inc. v. Guerra,* 860 S.W.2d 515, 525 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.); *Pfeffer v. Southern Texas Laborers' Pension Trust Fund,* 679 S.W.2d 691, 693 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Austin and Big Boy next complain that inadmissible hearsay was permitted during Shampine's examination of Logan. During the testimony about which they complain, Shampine asked Logan two questions concerning Andrews' deposition. First, Shampine asked if Austin and Big Boy told Logan that Andrews' opinion was "totally contrary" to his own. The judge overruled a hearsay objection, and Logan answered "No." Second, Shampine asked Logan, "Would it surprise you, Officer, that the expert said that Mr. Austin saw Shampine coming way back up the road before he decided to pull out of the intersection?" Austin and Big Boy objected on the basis that the question assumed facts not in evidence. Logan responded that he did not understand the question.

 Because Austin and Big Boy objected on hearsay grounds only to the first question, we need not review whether the second question was hearsay. The first question did seek to elicit hearsay, but any error in overruling the objection was harmless in light of Logan's answer and the fact that the question itself did not contain a "statement" by Andrews.

Finally, Austin and Big Boy complain that Shampine introduced inadmissible hearsay when he displayed Andrews' deposition before the jury. Again, this complaint does not correspond with the complaint made at the trial court level because Austin and Big Boy did not lodge a hearsay objection when Shampine displayed Andrews' deposition. Furthermore, as noted above, the jury already knew that Andrews gave a deposition, so any error committed by Shampine's display was harmless. Austin and Big Boy's fifth point of error is overruled.

D. *Motions in Limine*

■ Austin and Big Boy complain that, on numerous occasions, Shampine violated the trial court's order on their motions in limine by mentioning Andrews. First, we note that the record contains no explicit order on the motions in question. Additionally, Austin and Big Boy never objected that Shampine was violating the order on the motions in limine. By failing to object and ask for a motion to disregard, Austin and Big Boy have waived any error. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 637 (Tex.1986).

Austin and Big Boy contend that Shampine's violations of the motions in limine constituted incurable error. Two recent cases hold that the violation of a motion in limine can be incurable. *Kendrix v. Southern Pac. Transp. Co.*, 907 S.W.2d 111, 113–14 (Tex. App.—Beaumont 1995, writ denied); *Dove v. Director*, 857 S.W.2d 577, 580 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In both of these cases, the appealing party called the court's attention to the violation, and the party's objection was sustained. Two older cases are more directly on point, discussing a situation in which a party failed to object to the violation of a motion in limine. *Leatherwood v. Holland*, 375 S.W.2d 517, 520–21 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.), *overruled on other grounds*, *McCormack v. Guillot*, 597 S.W.2d 345, 346 (Tex.1980); *Montgomery v. Vinzant*, 297 S.W.2d 350, 356 (Tex.Civ.App.—Fort Worth 1956, no writ). Both of these cases undertake a curability analysis, and both conclude that the error was curable.

■ In short, no Texas court has ever reversed a case because of a violation of a motion in limine that was not met by an objection. Such a reversal would not be logical. By granting a motion in limine, a trial judge does not exclude evidence. Instead, he defers ruling on admissibility until such time as a party wishes to introduce the evidence. At that time, the party must obtain a ruling on the evidence before introducing it. The purpose of this procedure is to prevent the presentation of *potentially* prejudicial information before a ruling can be obtained. *Keene Corp. v. Kirk*, 870 S.W.2d 573, 580–81 (Tex.App.—Dallas 1993, no writ). In short, by subjecting evidence to a motion in limine, a court makes no determination of the actual prejudicial effect of the evidence. When no objection is made to a violation of a motion in limine, the trial court may assume the moving party has determined not to oppose the introduction of the evidence. At any rate, the moving party in this situation has not lost its opportunity to have prejudicial information excluded. Instead, the party has lost only the opportunity to be notified before the prejudicial information is introduced. As a result, when a party complains on appeal that incurably prejudicial information was placed before the jury, the party should not bring an appellate point complaining about the violation of a motion in limine. A jury cannot be inflamed by a procedural error. Instead, the party should bring an appellate point complaining that the information introduced was incurably prejudicial. Because Austin and Big Boy did not bring such a point of error, point of error six is overruled.

### III.

### Trial Amendment

Austin and Big Boy contend that the trial court erroneously permitted Shampine to amend his pleadings during trial in order to state a claim for future loss of earnings. The transcript does not contain Shampine's original petition or first amended original petition. However, we do have Shampine's second amended original petition, which does not claim future loss of earnings. This petition, filed two months before trial, was ap-

parently the active pleading when trial began.

At trial, Shampine presented evidence of future loss of earnings. Keith Porter and Will Felton, Jr., both Weber employees, testified that Shampine was incapacitated to the extent that he was no longer able to perform his job. Then, Jack Ward Grisham, Weber's human resource manager, confirmed that Shampine could not continue in his current position with the company. Grisham testified that Shampine had requested a downgrade to a less strenuous job. Grisham testified that Weber had essentially accepted the downgrade, although it had not been finalized. As a result of the downgrade, Shampine will lose $20,000.00 to $25,000.00 a year. Later, Austin and Big Boy cross-examined Grisham about the requested downgrade. The next witness was John Walterscheid, Weber's director of customer service, who testified that Shampine was no longer capable of performing his job.

Eventually, Shampine himself testified about lost future earnings. He testified at length about his job downgrade and its effect on his earnings. A while later, after Shampine's testimony had moved on to another subject, Austin and Big Boy objected because the second amended original petition did not seek future loss of earnings. The trial judge permitted Shampine to make a trial amendment to seek future loss of earnings.

 Tex.R. Civ. P. 66 governs trial amendment:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

*State Bar v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.1994) (citations omitted), further described the rules governing trial amendments:

A court may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face. The burden of showing surprise or prejudice rests on the party resisting the amendment. If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court. In such a case, the court's decision to allow or deny a trial amendment may be reversed only if it is a clear abuse of discretion.

Austin and Big Boy admit that Shampine's amendment did not assert a new cause of action. Therefore, they argue that they presented evidence showing surprise or prejudice. Austin and Big Boy introduced six exhibits on the issue of surprise. They introduced Shampine's deposition to show that Shampine had continued to work at Weber since the accident. This evidence is irrelevant to the issue of whether Shampine will eventually be demoted. Austin and Big Boy also introduced five excerpts from Shampine's interrogatory answers. Three of these excerpts-defendants' exhibits 21, 22, and 24— are irrelevant. They do not concern lost earnings, either future or past. Defendants' exhibit 23 is Shampine's original responses to interrogatories. In response to a question concerning lost earnings, Shampine did not indicate that he would suffer lost future earnings. However, defendants' exhibit 20 supplements this answer and informs Austin and Big Boy that Shampine will suffer lost future earnings. This exhibit informed Austin and Big Boy of the possibility of lost future earnings two months before trial.

Austin and Big Boy argue that the trial amendment was error because they were surprised. In their appellate brief, Austin and Big Boy assert that their surprise derived from the amendment being offered more than halfway through the trial. Austin and Big Boy also claim that the award for lost future earnings was speculative. This

claim is irrelevant because it has no bearing on the issue of whether Austin and Big Boy were surprised. In response, Shampine claims that until he filed his second amended original petition, all of his petitions claimed lost future earnings. The record does not contain any petitions predating the second amended petition; therefore, we cannot accept Shampine's argument at face value.

All in all, the exhibits introduced by Austin and Big Boy negate surprise. Therefore, we cannot conclude that the trial court abused its discretion by permitting trial amendment. Additionally, Shampine contends that the issue of lost future earnings was tried by consent. TEX.R. CIV. P. 67 provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of questions, as is provided in Rules 277 and 279.

■ A party consents to trial of an issue when it does not timely object to the presentation of evidence pertaining to that issue. *Service Lloyds Ins. Co. v. Slay,* 800 S.W.2d 359, 361–62 (Tex.App.—El Paso 1990, writ denied). Austin and Big Boy did not object until Shampine had presented all of its evidence of future lost earnings. The trial court could have concluded that the issue was tried by consent. Therefore, the seventh point of error is overruled.

## IV.

### Damages

■ Points of error eight through eleven complain that the evidence was legally and factually insufficient to support a finding that Shampine suffered $1,362,000.00 in damages. When both "no evidence" and "insufficient evidence" points are raised, we rule on the "no evidence" point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex. 1981). In reviewing a "no evidence" point of error, we consider only the evidence tending to support the finding, viewing it in its most favorable light, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all contrary or conflicting evidence. If there is any probative evidence, more than a scintilla, supporting the finding, the point must be overruled. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). In reviewing an "insufficient evidence" point of error, we will consider all of the evidence in the record that is relevant to the fact being challenged. We will reverse only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). For purposes of analytical clarity, we will discuss separately the sufficiency of the evidence to support each of the damages elements found by the jury.

### A. *Past Physical Pain and Mental Anguish*

■ Shampine suffered multiple painful injuries from the wreck. He was trapped in his pickup, unable to exit and fearful of fire, for thirty minutes after the wreck. Shampine testified that he still suffers "constant knee pain all day long." In fact, his knees hurt as he was sitting in court testifying. Rita Shampine, his wife, confirmed this testimony. She testified that Shampine had difficulty sleeping because of pain. She further testified that her husband had not had a pain-free day since the wreck. She testified that the injury has significantly affected Shampine's quality of life and has caused him to worry about the future. Dr. Stephen Weinberg, an orthopedic surgeon, testified that Shampine also suffered from considerable shoulder pain. Additionally, several of Shampine's co-workers testified that Shampine appears to be in pain during workdays.

■ At trial, Austin and Big Boy argued that Shampine's pain was caused by surgery on his right knee two months before the accident. Perhaps some of Shampine's

pain comes from a right knee problem predating the accident. However, Weinberg and Shampine testified that Shampine's principal problems are in his left knee. There is no evidence that the left knee was injured before the wreck. Additionally, Weinberg testified that Shampine's pain was caused by the accident.

> [T]he amount to be properly recovered for pain and mental anguish is a question uniquely in the purview of the jury, and such awards are made largely in its discretion. There is no set formula for finding the value that should be awarded for enduring physical pain and mental anguish. Because personal injury damages are unliquidated and are not capable of measurement by any certain standard, the jury has broad discretion in fixing the amount of the award.

*Baylor Med. Plaza Servs. Corp. v. Kidd,* 834 S.W.2d 69, 78 (Tex.App.—Texarkana 1992, writ denied) (citations omitted). The jury had plenty of evidence to award $150,000.00 for past physical pain and mental anguish.

#### B. *Future Physical Pain and Mental Anguish*

 Dr. Weinberg testified that as a result of the accident, Shampine will require "total knee replacement" of both knees in the near future. This surgery will involve cutting out Shampine's knees and installing artificial knees. This surgery can lead to many serious complications, including amputation or death. Because knee replacements tend to wear out, Shampine may require a second surgery some years down the line. Weinberg further testified that on a scale from one to ten, the pain involved in a total knee replacement would equal nine or ten.

Austin and Big Boy presented the deposition testimony of Dr. Robert G. Stone, another orthopedic surgeon consulted by Shampine. Dr. Stone testified that Shampine most likely will not need a total knee replacement. However, the jury was entitled to believe Dr. Weinberg. Furthermore, the jury could conclude that Shampine will continue to suffer day-to-day pain even without the surgery. Therefore, the evidence was sufficient to support an award of $400,000.00 for future physical pain and mental anguish.

#### C. *Future Loss of Earnings*

 As noted above, Shampine testified that he volunteered for a job downgrade that would cost him from $20,000.00 to $25,000.00 in salary and bonus per year. Shampine also testified that there was no mandatory retirement age at Weber. Grisham confirmed that Shampine could not continue in his current position at Weber. Grisham testified that Shampine had requested a downgrade to a less strenuous job. He also testified that Weber had essentially accepted the downgrade, although it had not been finalized. Grisham confirmed that Shampine will lose between $20,000.00 and $25,000.00 per year as a result of the downgrade.

Austin and Big Boy noted that Shampine worked for nearly four years at Weber after the accident without taking a downgrade in position. However, several Weber employees testified that business was in a slump during part of that period. As a result of increased business, Shampine's job was becoming much more strenuous around the time of trial. Austin and Big Boy also pointed out that Shampine had received some positive job evaluations after the accident. However, Porter and Grisham testified that Shampine's job performance was impaired by his injuries. Finally, Austin and Big Boy noted that the position downgrade was not finalized at the time of trial. However, Grisham testified that the downgrade had essentially been accepted. All in all, the evidence is sufficient to support an award of $300,000.00 for future loss of earnings.

#### D. *Past Physical Impairment*

 Shampine testified that he has difficulty even getting out of bed in the morning. Because of his injuries, his walk is now more like a waddle. Shampine also testified that he is no longer able to participate in many outdoor activities that he had engaged in before the accident.

Rita Shampine testified that her husband has difficulty getting out of bed and getting into the shower in the morning. Additionally, he has difficulty maneuvering around his

kitchen. Shampine's family has not taken a vacation since the accident.

Warren Smith testified that Shampine is "not able to get around near as well as he used to. He has trouble if he bends down or kneels down at work. He had to—it takes him a little bit longer to get up, stand upright and get his legs back underneath him."

Dr. Weinberg testified that a shoulder injury resulting from the accident limited Shampine's ability to lift objects.

Will Felton, Jr. testified that Shampine has difficulty negotiating stairs and tends to waddle when he walks.

Keith Porter testified that Shampine now has difficulty performing the physical aspects of his job. Additionally, Shampine, who was physically active before the accident, now does not jog or perform yard work.

John Walterscheid, a Weber employee, testified that Shampine has been "a different person" since the wreck. He used to be very athletic, but now he cannot move around very much.

Austin and Big Boy noted Shampine's positive job evaluations. They also offered the deposition testimony that Shampine entered two bass tournaments in 1994. However, Shampine presented a voluminous amount of evidence about physical impairment. Therefore, the evidence was sufficient to support an award of $100,000.00 for past physical impairment.

### E. *Future Physical Impairment*

Dr. Weinberg testified that even with an artificial knee, Shampine will not be able to do all the activities that he could with a normal joint. Additionally, the jury could conclude that Shampine's current impairment will not disappear, whether or not he obtains knee replacements. Therefore, the evidence was sufficient to support an award of $300,000.00 for future physical impairment.

### F. *Past Medical Care*

Shampine introduced evidence that his past medical bills totaled $44,033.37. Austin and Big Boy did not introduce any controverting evidence. Therefore, the evidence was sufficient to support an award of $37,000.00 for past medical care.

### G. *Future Medical Care*

Weinberg testified that Shampine's knee replacement surgeries will cost $93,-600.00. Austin and Big Boy did not introduce any controverting evidence. Therefore, the evidence was sufficient to support an award of $75,000.00 for future medical care. As a result, points of error eight through eleven are overruled.

The judgment is affirmed.