TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,

v.

Howell PUCKETT, Jr., Appellee.

No. 01–90–00291–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 21, 1991.

Rehearing Denied Jan. 9, 1992.

Janet Giessel Townsley, Mike Phillips, David Edwards, Houston, for appellant.

Michael L. Atkinson, Conroe, for appellee.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

SAM BASS, Justice.

This is a suit for breach of the duty of good faith and fair dealing. Texas Employers Insurance Association appeals a jury verdict of approximately $1.9 million.

We affirm.

Howell Puckett, appellee, was injured while working for Bechtel Petroleum, Inc. Texas Employers Insurance Association (TEIA), Bechtel's workers' compensation carrier, began to pay weekly benefits to Howell. Following surgery, Howell was unable to return to work and his disability worsened. On September 19, 1984, TEIA terminated his weekly compensation benefits, allegedly informing him that their action was required by law. TEIA offered to settle for $8,400. Puckett refused and retained counsel soon thereafter.

Puckett sued TEIA for breach of the fiduciary duty of good faith and fair dealing; unfair claims settlement practices; deceptive trade practices; and breach of contract. On the day of trial, Puckett settled his compensation claim for $37,500. The jury found in Puckett's favor on all theories and awarded him mental anguish damages in the amount of $150,000; punitive damages in the amount of $1,500,000; and $200,000 in attorney's fees. The trial court signed the judgment on January 4, 1990. TEIA paid the judgment and now seeks recovery of that amount plus 10% interest from Puckett.

In its first point of error, TEIA complains that Puckett's counsel engaged in incurable jury argument. To preserve error on curable argument, counsel must object and request the court to instruct the jury to disregard the argument. Objection is not required in the case of incurable argument, however, which is argument so inflammatory that its harmful or prejudicial nature cannot be cured by an instruction to disregard. *Gannett Outdoor Co. of Texas v. Kubeczka,* 710 S.W.2d 79, 86 (Tex. App.—Houston [14th Dist.] 1986, no writ). TEIA did not object or request an instruction to disregard or a mistrial.

TEIA contends that during argument Puckett's counsel improperly stated facts which were not in evidence; referred to "hundreds of similar cases" involving the same offending conduct by TEIA; referred to alleged attempts by TEIA to conceal evidence and suppress the truth during discovery; called TEIA employees "fat cats;" and encouraged the jury to abandon their neutrality and identify with the plaintiff.

To demonstrate that jury argument was harmful, a party must demonstrate (1) an error; (2) that was not invited or provoked; (3) that was preserved by the proper trial predicate such as an objection, a motion to instruct, or a motion for mistrial; or (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge; and (5) that the argument by its nature, degree and extent constituted reversibly harmful error, including (6) the argument's probable effect on a material finding. *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 839–40 (Tex. 1979).

A reversal must come from an evaluation of the whole case, which begins with the voir dire and ends with closing argu-

ment. The complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the evidence. *Reese*, 584 S.W.2d at 840. The test is whether a juror of ordinary intelligence could have been persuaded by the argument to agree to a verdict contrary to that to which he would have agreed but for such argument. *Kubeczka*, 710 S.W.2d at 86–87.

■ The test, under the facts of this case, is whether the jury's verdict was probably grounded on evidence of TEIA's conduct in its dealings with Puckett or whether counsel's jury argument probably swayed them to render a verdict contrary to that evidence. TEIA does not provide record references to assist the Court in its evaluation of the record as a whole (1763 pages in length).

In addition to his own testimony and that of an attorney who testified to TEIA's pattern and practice of unfair claims settlement practices, Puckett relied primarily on the testimony and admissions of five TEIA representatives. Puckett also introduced documentary evidence from TEIA's own files which supported certain inferences from the testimony. The evidence showed the following:

(1) TEIA violated Article 8306, § 10 of the Workers' Compensation Act[1] by terminating Puckett's benefits when he had not been released by any doctor and was still unable to return to work. One expert witness for TEIA testified that this practice by TEIA was unreasonable.

(2) Even if Puckett had been only partially incapacitated, TEIA violated Article 8306, § 12[2] by refusing to pay reduced weekly compensation benefits to Puckett when he would not accept a lump sum in settlement. Again TEIA's expert agreed this practice was unreasonable.

(3) TEIA violated Industrial Accident Board Rule 53.60 which allowed for suspension of benefits only on certain conditions, none of which applied in Puckett's case.

(4) TEIA committed unfair claims settlement practices as prohibited by State Bd. of Ins. Rule 41454.

(5) TEIA violated its own Workers' Compensation Manual by discontinuing benefits before negotiating settlement with an injured worker.

(6) By inference, TEIA attempted to cover up its violation of its own manual by producing to Puckett a copy of the manual which was missing the section prohibiting such practices.

(7) TEIA admitted inventing terminology to use in that part of the IAB "A–2"[3] form that indicates the reasons for suspending payment of benefits because TEIA knew that the IAB did not approve suspending benefits when a claimant had reached "maximum medical improvement."

(8) TEIA also stated that it was generally their practice "whenever we had a specific injury, when a disability rating was given, compensation was stopped; and we tried to give the man their A–2 additional money." They stopped the benefits even though the worker was totally incapacitated and could not return to work. The TEIA manual did not endorse this practice.

(9) TEIA further admitted that it lied when it stated on Puckett's A–2 form that Puckett's benefits were suspended because he had returned to work.

(10) And finally, while insisting at the time of trial that they considered Puckett's injury a specific injury, TEIA admitted that it ignored its own counsel's advice that it was imperative to follow up with Puckett's doctor to determine whether Puckett had a general rather than a specific injury.

---

1. Act of May 26, 1981, 67th Leg.R.S., ch. 861, § 1, 1981 Tex.Gen.Laws 3290. Article 8306, § 10 establishes guidelines for payment of weekly compensation in the event of a worker's total incapacity. Article 8306 § 12 sets out a schedule of compensation to be paid for "specific" injuries.

2. Act of May 10, 1973, 63rd Leg., R.S., ch. 88, § 7, 1973 Tex.Gen.Laws 187, 190.

3. An A–2 form must be completed by the carrier and sent to the IAB to notify the board that the carrier is suspending compensation payments. The form requires the carrier to state a reason for the suspension of payments.

The jury found that TEIA's conduct was unconscionable. Although TEIA defended on grounds that its actions were, in fact, customary in the insurance industry and, therefore, reasonable, TEIA calls our attention to no specific evidence in the record which would have persuaded a juror of ordinary intelligence to agree to a contrary verdict in the absence of counsel's jury argument.

Counsel may properly argue reasonable inferences from the evidence. *See Reese*, 584 S.W.2d at 837. Hyperbole, a figurative technique of oral advocacy and a part of our legal heritage and language, is not improper. *Id.* at 838.[4] Whether by cross-examination or advocacy, the jury may be encouraged to weigh, evaluate, and test the evidence before it. *Id.* Here, examining the whole record, we conclude that the jury's verdict is amply supported by the evidence. We cannot say that but for the argument of Puckett's counsel, the jury would have reached any other verdict than it did.

TEIA's first point of error is overruled.

■ We next consider TEIA's points of error number two, nine, and 10, all of which raise challenges to the sufficiency of the evidence:

> Point of Error No. 2. The evidence was insufficient to sustain the jury's finding of a breach of the duty of good faith and fair dealing, insomuch as there was no evidence establishing industry standard.
> Point of Error No. 9. There was no evidence or the evidence was legally insufficient to support the jury's answers to questions no. 1 and 7 of the jury charge.
> Point of Error 10. The jury's answers to questions no. 1 and 7 were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

Question one inquired whether TEIA had failed to deal with Puckett fairly and in good faith; question seven inquired whether TEIA had engaged in unfair claims settlement practices.

A claimant who sues a workers' compensation carrier for breach of the duty of good faith and fair dealing must establish: (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy; and (2) that the carrier knew or, based on its duty to investigate, should have known that there was not a reasonable basis for denying or delaying payment of the claim. *Aranda v. INA*, 748 S.W.2d 210, 213 (Tex.1988).

Proof of liability, therefore, requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claim. The second element balances the right of the carrier to reject an invalid claim with the duty of the carrier to investigate whether the claim is compensable. *Aranda*, 748 S.W.2d at 213. According to the *Aranda* court, this burden will be met by establishing that the carrier actually knew or should have known there was no reasonable basis to deny the claim or delay payment. *Id.*

On the first element, TEIA insists that proof of the standard of conduct in the insurance industry, as evidenced by the practices of other insurance carriers, is a prerequisite to showing whether an insurer acted reasonably. Since Puckett did not prove that other insurance companies would have acted differently from TEIA in the same circumstances, TEIA argues he wholly failed to prove that TEIA acted unreasonably.

Puckett contends, however, that the objective standard by which the carrier's conduct must be judged is that set by the legislature through the statutes it passes and the regulatory agencies it creates. Even if TEIA could show that it is customary pattern and practice in the industry to commit wrongdoings or violate the law,

---

**4.** *Reese* is instructive on the use of hyperbole to make a point. There, a lawyer for the insurance carrier had argued that Reese "drove by a *thousand* doctors between the Astrodome and Spring Branch" to see the particular doctor who, according to the lawyer's argument, would "build those medical bills up real high."

that showing would not render such conduct reasonable.

The testimony of TEIA through its employees established that TEIA violated sections 10 and 12 of article 8306 of the Workers' Compensation Act. It violated the rules and regulations set by the IAB, as well as the rules of the Insurance Board which apply to insurance companies in general. Its own experts stated that such conduct was not reasonable. Evidence that TEIA's conduct was in contravention of existing law demonstrates the absence of a reasonable basis for TEIA's actions denying benefits to Puckett.

On the second element of the *Aranda* test, Puckett produced sufficient evidence to show that TEIA knew or should have known that its conduct in terminating Puckett's benefits was unreasonable. TEIA admitted Puckett did not have to accept a lump sum payment; that he had the right to receive benefits weekly; that, at a minimum, TEIA would have had to pay him benefits for 150 weeks and it only paid for 33; that even if Puckett were not entitled to receive maximum benefits after 33 weeks, he was entitled to receive weekly compensation at less than the maximum for the remainder of the 150 weeks. Nevertheless, TEIA terminated all benefits to Puckett and refused to reinstate them thereafter.

TEIA took the position that it refused to continue to pay because Puckett's injury was "questionable." However, TEIA did not contend that Puckett was not injured or that the injury did not occur in the course and scope of his employment. Instead, by "questionable" TEIA meant that it was unclear to the company whether Puckett's injury was "general" or "specific." TEIA admitted, however, that, either way, the company still had an obligation to pay benefits to Puckett. Furthermore, the evidence indicated that TEIA consciously failed to investigate the extent of Puckett's injury in order to end its confusion. Even after TEIA's own lawyers directed the company call Puckett's doctor to inquire whether the injury was limited to Puckett's wrist or whether it extended to his shoulder, TEIA took no action.

The evidence is sufficient to support the jury's answers to issues one and seven.

Points of error two, nine, and 10 are overruled.

■ In its third point of error, TEIA complains of the trial court's exclusion of certain testimony.

TEIA claims error because its expert witness, T.B. Wright, an insurance defense lawyer, was not allowed to testify that it was custom and practice in the insurance industry to discontinue benefits in the event of a specific injury where the doctor had judged the individual to have achieved maximum medical recovery and had given a rating of disability. Puckett's counsel objected to introduction of wrongful acts by third parties to prove that similar acts by TEIA were reasonable. He also objected that the witness' testimony to the internal workings of other insurance companies would be mere speculation because he had never worked for them. The court sustained the objection. When TEIA later attempted to introduce similar testimony through another witness, the court sustained Puckett's objection for the same reasons.

The court properly sustained the objections because, had the witnesses testified to practices that TEIA had already admitted were in violation of the Workers' Compensation Act, such testimony would not have shown the practices to be reasonable. Furthermore, although it sets out the substance of the excluded testimony in its brief, TEIA did not preserve the testimony through a bill of exceptions at trial. Consequently, even if the trial court erred in excluding the testimony, any such error has been waived.

The third point of error is overruled.

■ Point of error number four also complains of the exclusion of testimony offered by TEIA of its net worth. TEIA argues that under *Lunsford v. Morris*, 746 S.W.2d 471 (Tex.1988), a defendant is entitled to present evidence of its own net worth.

Puckett questioned Thomas, TEIA's vice-president, about the financial information contained in TEIA's 1988 annual report, prepared by a national accounting firm. Through Thomas, Puckett introduced evidence contained in the report of the amount of TEIA's gross revenues, income earned, investment gains, reinsurance, total assets, premiums earned, and cash on hand. Thomas also testified about the existence of a deferred, unrecorded liability of TEIA in the form of deferred assessments owed to the workers' compensation assigned risk pool.

When TEIA attempted to question Thomas about "what net worth really means," Puckett objected that Thomas had not been qualified as a expert who could offer expert opinions outside the parameters of the annual report. The court sustained the objection. However, on two other occasions Thomas testified that TEIA's liabilities exceeded its assets by $21 million and that subtracting the amount TEIA owed from what it owned would result in a negative $21 million. Therefore, if the exclusion of Thomas' earlier testimony were error, it would have been harmless error.

■ In its fifth point of error, TEIA complains that Puckett's cause of action was barred by the doctrine of judicial estoppel because he settled his compensation claim prior to trial. TEIA relies on *Izaguirre v. TEIA*, 749 S.W.2d 550 (Tex. App.—Corpus Christi 1988, writ denied). In that case, three plaintiffs filed bad faith claims against TEIA after having settled their compensation claims. While two of the plaintiffs had signed affidavits admitting that the liability of the insurance carrier was "indefinite, uncertain and incapable of being satisfactorily established," Izaguirre had signed no such statement. 749 S.W.2d at 555. The two plaintiffs who had judicially admitted that their claims were questionable could not sustain a claim that the insurer had denied the claim or delayed payment in bad faith. However, the court held that Izaguirre, unlike the other two plaintiffs, had not judicially admitted that her claim was questionable. She was not

estopped from bringing the bad faith claim. *Id.*

Puckett signed no statement indicating that his claim was questionable. In accepting the settlement of the compensation claim, Puckett and TEIA agreed that Puckett's other claims were not released or settled. The following language appears in the judgment, release, and affidavit signed by Puckett:

Plaintiff, Howell Puckett, Jr. does not release Defendant, Texas Employers' Insurance Association, from Plaintiff's cause of action bearing No. 85CV1006, styled "Howell Puckett, Jr. v. Texas Employers' Insurance Association," which has been filed in the 10th Judicial District Court of Galveston County, Texas.

Point of error five is overruled.

■ In point of error number 11, TEIA complains that special issue number one was an incorrect statement of the law *as to the substantive elements of a claim* for a breach of the duty of good faith and fair dealing in connection with the processing of a workers' compensation claim. TEIA raised nine different objections to issue number one. On appeal, TEIA seems to rely on an aspect of an objection that was not raised at trial. Nowhere among the nine objections does TEIA refer to the failure of the question to present the proper elements of the plaintiff's claim.

The question submitted was as follows:

### QUESTION NO. 1

Do you find from a preponderance of the evidence that TEIA failed to deal fairly and in good faith when it denied payment of weekly worker's compensation benefits to Howell Puckett?

You are instructed that a workers' compensation carrier has a duty to deal fairly and in good faith in its decision to pay or deny worker's compensation weekly benefits.

In order to find that TEIA failed to deal fairly and in good faith in the payment of workers' compensation benefits, you must find that:

(1) There was not a reasonable basis for a reasonable worker's compensation carrier under the same or similar circumstances to deny weekly benefits, and

(2) TEIA denied the payment of weekly benefits when

    (a) TEIA knew that it had no reasonable basis for denying the claim or

    (b) TEIA failed to determine whether there was any reasonable basis for such denial.

In this connection, you are instructed that a workers' compensation carrier has a duty to conduct a reasonable investigation in connection with its decision to pay or deny worker's compensation weekly benefits.

Answer "Yes" or "No."

Answer: _____

This issue, including the instructions, tracks the language of *Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165, 167 (Tex.1987). It is a correct statement of the law. Although TEIA claims that the language should have instead tracked the opinion in *Aranda,* TEIA does not contend that *Aranda* overruled *Arnold* or rejected the language of that holding. To the contrary, the emphasis in the two opinions that bears on the submission of the jury question is substantially the same. *See Aranda,* 748 S.W.2d at 212–13. Likewise, State Bar of Texas, Texas Pattern Jury Charge PJC 29.03 (1990), entitled "good faith and fair dealing," while utilizing a format consisting of three separate questions, is substantially similar in content to the issue submitted in the present case. The objection is unfounded.

Point of error number 11 is overruled.

■ Points of error six, seven, and eight challenge the trial court's refusal to submit certain instructions to the jury in connection with question number one. Relying on *Aranda* and *Fuentes v. TEIA,* 757 S.W.2d 31 (Tex.App.—San Antonio 1988, no writ), TEIA specifically requested the following instructions:

Texas Employers Insurance Association may deny invalid or questionable claims without breaching its duty of good faith and fair dealing, even if such denial is erroneous.

A workers' compensation carrier has the right to deny or dispute questionable claims.

In order to find that there was not a reasonable basis for a denial of workers' compensation weekly benefits where the denial is based upon the interpretation of medical evidence which requires the carrier to determine the nature, extent, duration or existence of injury, disease or disability, the character and quality of the medical evidence must be such that reasonable minds could not disagree as to its meaning.

TEIA argues that it was error to omit these "substantially correct statements of the law." It reasons that, without such instructions, the jury would not know that a carrier is entitled to some latitude in its decision-making process.

Puckett argues, however, that, rather than aiding the jury in its deliberations, the tendered instructions would have created confusion since they refer to a "questionable claim" that is not defined. He points out that there was no evidence before the jury that his claim was invalid or questionable. The fact that TEIA disputed the extent of his injury did not render the claim questionable nor did it give TEIA the right to terminate benefits that TEIA admitted it was obligated to pay. Neither did the evidence indicate that TEIA had terminated the benefits because of the character or quality of Puckett's medical evidence. Moreover, the jury was not told what type and extent of medical evidence would be sufficient to support denial of a claim.

The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict. TEX.R.CIV.P. 277. The only function of explanatory instructions in the charge is to aid and assist the jury in answering the issues submitted. *Badger v. Symon,* 661 S.W.2d 163, 165 (Tex.App.—Houston [1st Dist.] 1983, no writ). The trial court has broad discretion in the submission of instructions. *Atchison, Topeka & Santa Fe Ry. v. O'Merry,* 727 S.W.2d 596, 601 (Tex.App.—Houston

[1st Dist.] 1987, no writ). The trial court does not err in refusing to give instructions that do not aid the jury. *Id.*

Points of error six, seven, and eight are overruled.

██ In points of error 12, 13, 14, and 15, TEIA argues that the trial court lacked subject matter jurisdiction because Puckett's cause of action was preempted by ERISA, 29 U.S.C. § 1001 (1990). Further, TEIA contends that Puckett could not recover punitive damages because ERISA does not allow recovery of punitive damages.

ERISA preempts those cases relating to employee benefit plans. 29 U.S.C. 1003 (1990). *See generally Gorman v. Life Ins. Co. of North America*, 811 S.W.2d 542 (Tex.1991) (suit for denial of coverage under *accidental death policy which was part of employee benefits package*); *Cathey v. Metropolitan Life Ins. Co.*, 805 S.W.2d 387 (Tex.1991) (suit for discontinuation of benefits under *group health care and disability insurance package*). Neither *Gorman* nor *Cathey* involved workers' compensation insurance. Workers' compensation cases are an exception under 29 U.S.C. § 1003 (1990), which provides that ERISA applies to any employee benefit plan except:

> (b) The provisions of this title shall not apply to any employee benefit plan if—
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws....

29 U.S.C. § 1003(b)(3) (1990). *See also Gibbs v. Service Lloyds Ins. Co.*, 711 F.Supp. 874, 877 (E.D.Tex.1989); *Olivarez v. Utica Mut. Ins. Co.*, 710 F.Supp. 642, 643 (N.D.Tex.1989); *Foust v. City Ins. Co.*, 704 F.Supp. 752, 754 (W.D.Tex.1989).

TEIA argues under *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91–92, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983), that section 1003(b)(3) applies only when state law *requires* the employer to provide workers' compensation insurance. The statute states, however, that the provisions of ERISA shall not apply to any employee benefit plan if the plan is maintained solely to comply with *"applicable workmen's compensation laws."* It does not say *mandatory* workmen's compensation laws. Furthermore, *Shaw*, which involved disability insurance *benefits included in a multi-benefit package* rather than a separately administered disability plan under New York's Disability Benefits Law, stands for the opposite result:

> Congress surely did not intend, at the same time it preserved the role of state disability laws, to make enforcement of those laws impossible.... The fact that state law *permits* employers to meet their state law obligations by including disability insurance benefits in a multi benefit Erisa plan ... does not make the state law wholly unenforceable as to employers who choose that *option.*

463 U.S. at 108, 103 S.Ct. at 2905–06 (emphasis added).

Finally, additional evidence that preemption is not intended may be found under 28 U.S.C. § 1445, the removal statute. That statute specifically provides that workers' compensation claims are not removable to federal court.

### § 1445. Nonremovable actions

(c) A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

TEIA's points of error 12, 13, 14, and 15 are overruled.

██ Points of error 16 and 17 raise a challenge to the constitutionality of Texas law insofar as it allows recovery of punitive damages. In point of error 16, TEIA contends that Texas law on punitive damages is impermissibly vague and thus violative of a defendant's due process rights regarding the severity of punishment to be imposed in a punitive damages award.

Shortly after TEIA filed its brief in this Court, the United States Supreme Court addressed this issue in *Pacific Mutual Life Insurance Co. v. Haslip,* — U.S. —, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), an Alabama case involving fraud by an insurance company. The *Haslip* court, with eight

justices in agreement, pointed to three elements of Alabama procedure that prevented the punitive damage award in that case from violating the defendant's due process rights:

(1) the trial court's instructions to the jury expressly described the purpose of punitive damages, to punish the defendant and to deter similar conduct in the future;

(2) the Alabama supreme court had, prior to the trial of Haslip's case, established procedures for scrutinizing punitive damage awards; and

(3) Alabama's scheme of appellate review of punitive damage awards provided a check on the jury's and the trial court's discretion.

111 S.Ct. at 1044–1046.

In her dissent, Justice Sandra Day O'Connor advocated instructing the jury on the seven factors that the Alabama supreme court considers relevant in reviewing punitive damage awards. 111 S.Ct. at 1060–61.

In the case before us, special issue number 11, which was properly predicated on affirmative answers to liability questions, inquired as follows:

### QUESTION NO. 11

Find from a preponderance of the evidence that sum of money, if any, which should be assessed against TEIA as exemplary damages for its failure to deal fairly and in good faith.

"Exemplary damages" means an amount that you may, in your discretion, award as punishment and as a warning and example to others situated like it (sic),

---

from committing like offenses and wrongs in the future.

In determining the amount, you may consider:

(1) the nature of the wrong,

(2) the frequency of the wrongs committed,

(3) the character of the conduct involved,

(4) the degree of culpability of the wrongdoer,

(5) the situation and sensibilities of the parties concerned,

(6) the extent to which such conduct offends a public sense of justice and propriety, and

(7) the size of an award needed to deter similar wrongs in the future.

In form and content, the question comports with the Texas Supreme Court's holdings in *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981) and *Southwestern Inv. Co. v. Neeley,* 452 S.W.2d 705, 707 (Tex.1970). The factors set forth in the question to guide the jury are the same factors to be relied upon by the appellate courts in reviewing punitive damage awards. We conclude, therefore, under Texas law and the *Haslip* decision, that the issue and instruction on punitive damages were not violative of TEIA's due process rights.

Point of error 16 is overruled.

■ In point of error 17, TEIA challenges the award of punitive damages as grossly excessive and violative of its due process rights. While TEIA points to the opinion testimony of two of its experts as evidence that it did not act with conscious indifference,[5] TEIA does not directly challenge the sufficiency of the evidence to support the award. Neither does TEIA

---

5. Two TEIA witnesses testified as follows:

Q. (to 1st witness) ... [C]an you tell the jury whether or not you have an opinion that the discontinuation of the weekly benefits in September of 1984 and the failing to reinstate the weekly benefits in May or June or 1985 was the result of conscious indifference to the rights or welfare of Howell Puckett? `
A. I do have an opinion.... [t]hat it was not a result of conscious indifference.
Q. Was the handling of this ... case, as you know it, reasonably done by TEIA?

A. I think it was.

. . . .

Q. (to 2d witness) In reviewing of the file and based on the refusal or the discontinuation of benefits, weekly benefits in September of 1984, and also based on failure to reinstate weekly benefits in 1985, would you give the ladies and gentlemen of the jury your opinion as to whether or not these actions were unconscionable?
A. I do not believe that they were unconscionable.

detail any of the other evidence in its challenge to the award. Instead, it argues that the present punitive damage law in Texas is fundamentally unfair. Our analysis under TEIA's point of error 16 and the *Haslip* decision adequately addresses this point.

Point of error number 17 is overruled.

In point of error 18, TEIA complains that the trial court erred in denying its motion to include language in the judgment limiting TEIA's payment and Puckett's satisfaction of all monetary damage awards to the capital or surplus funds of TEIA. TEIA has paid the judgment. Therefore, this point is moot and it is overruled.

The judgment of the trial court is affirmed.