Opinion issued April 30, 2002











 

 


In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00393-CV

____________


TERRACE LAND CO., Appellant


V.


AMERICAN REFUSE, INC., BRI RIVER OAKS LIMITED
PARTNERSHIP, AND M.L. DEER CONSTRUCTION, Appellees


* * * *


BRI RIVER OAKS LIMITED PARTNERSHIP AND M.L. DEER
CONSTRUCTION, Appellants


V.


TERRACE LAND CO. AND AMERICAN REFUSE, INC., Appellees






On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 98-44688






O P I N I O N


 This appeal arises from a trespass suit brought by Terrace Land Company
(Terrace) against BRI River Oaks Limited Partnership(BRI), M.L. Deer Construction
(M.L. Deer), and American Refuse, Inc. 

 We affirm in part and reverse and render in part.

CASE OVERVIEW


 Terrace owned approximately two acres of land at the corner of Westheimer
and Buffalo Speedway in Houston. In September 1996, the front portion of this
property was leased by River Oaks Plant House. The remaining portion of the land,
an L-shaped piece of unimproved property, approximately 1.25 acres in size, is
comprised of two tracts, a .4804-acre tract and a .7653-acre tract. 

 In September 1996, the 1.25-acre piece of property was not leased. However,
in 1996, River Oaks Plant House used the land for parking cars and storage. In 1999,
while the litigation in this case was pending, Terrace leased the 1.25-acre piece of
property to River Oaks Plant House.

 BRI owned "River Oaks Apartments"--a 27-story apartment complex--which
is located next to, and immediately west of, the 1.25-acre piece of unimproved
property owned by Terrace. BRI hired M.L. Deer to repair a cinder block wall, which
formed the boundary of the two properties. The wall repair included replacing broken
cinder blocks and painting the wall. 

 M.L. Deer arranged for the rental of a dumpster from American Refuse to use
in conjunction with the wall repair. With the tacit approval of BRI, and at the
direction of M.L. Deer, American Refuse placed the dumpster partially on Terrace's
property, and partially on the property of another third party, during the wall repair. 
Specifically, the dumpster was placed on the southwestern corner of the .4804-acre
tract, which is part of the larger 1.25-acre tract owned by Terrace. The dumpster was
on Terrace's land for a 10-day period from September 13 to 23, 1996. M.L. Deer also
temporarily placed cinder blocks and other related construction materials on Terrace's
property near the dumpster. It is uncontested that the placement of these items on
Terrace's property did not result in any physical damage to the property. However,
at the completion of the wall-repair project, Terrace discovered that 27 trees had been
cut down on its property near various sections of the wall. 

 Terrace sued BRI, M.L. Deer, and American Refuse for trespass, alleging they
had placed the dumpster and construction materials on Terrace's property, accessed
the wall using Terrace's land, and cut down Terrace's trees. Portions of the 1.25-acre
piece of property near the wall were the only property Terrace alleged was affected
by the trespass. 

 For its alleged injuries, Terrace sought two measures of damages: (1) fair
market rental value, based on allegations that Terrace had been temporarily deprived
of the use and possession of its property, and (2) the "intrinsic value" of the 27 trees
that had been cut down. 

 Terrace also sought punitive damages from BRI and M.L. Deer. After the
defense rested, the trial court granted a directed verdict against Terrace on its claim
for punitive damages. 

 The jury found BRI and M.L. Deer had cut down the trees on Terrace's
property and found BRI should compensate Terrace in the amount of $13,500 for the
intrinsic value of the trees. The jury also found M.L. Deer and American Refuse had
trespassed on Terrace's land and awarded Terrace $12,500 for the fair market rental
value of the property. The judgment also provided that M.L. Deer must indemnify
American Refuse for damages awarded to Terrace. 

 Challenging the judgment entered against them, BRI and M.L. Deer
(collectively "defendants" hereinafter), in a joint brief, complain in six points of error
that (1) the evidence is legally insufficient to support the damages awarded against
them in the judgment; (2) "fair market rental damages" were an improper measure of
damages; (3) the fair market rental damages were not supported by expert testimony;
(4) the trial court did not require Terrace to "fully open," during closing argument,
and (5) Terrace's attorney engaged in improper jury argument. 

 Terrace Land also appeals in one cross-point, contending the trial court erred
in granting a directed verdict on its claim for punitive damages.

DISCUSSION


A. Sufficiency of Evidence--Fair Market Rental Value Damages

 In point of error two, defendants (1) contend there was no evidence to support the
award of fair market rental damages to Terrace.

 When, as here, the party without the burden of proof challenges the legal
sufficiency of the evidence, we will sustain the challenge only if, considering the
evidence and inferences in the light most favorable to the finding, there is not more
than a scintilla of evidence supporting it. Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995); Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987).
"More than a scintilla of evidence exists where the evidence supporting the finding,
as a whole, 'rises to a level that would enable reasonable and fair-minded people to
differ in their conclusions.'" Crye, 907 S.W.2d at 499 (quoting Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 25 (Tex. 1994)).

 The jury answered "yes" to the following question: "Did M.L. Deer
Construction Co. trespass upon Terrace Land Co.'s property at any time on or after
September 17, 1996?" The jury was then asked, "What sum of money, if paid in cash,
would fairly compensate Terrace Land Co. for the fair market rental value, if any, of
the land used by M.L. Deer Construction Co. and American Refuse, Inc.?" With
regard to this question, the jury was instructed as follows: "'Fair market rental value'
means the amount that would be paid in cash by a willing renter who desires to rent,
but is not required to rent, to a willing lessor who desires to lease, but is under no
necessity of leasing. . . ." The jury answered this question by awarding Terrace
$12,500.

 In support of the fair market rental damages, Terrace offered the testimony of
its executive vice-president, Henry Taub. Taub testified about the lease agreement
between River Oaks Plant House and Terrace. As previously stated, in September
1996, River Oaks Plant House leased the portion of Terrace's property that fronted
Westheimer and Buffalo Speedway, but the two tracts comprising the 1.25 acres at
issue in this suit were not rented at that time. The lease was modified to include the
two tracts in 1999. 

 On cross-examination, Taub acknowledged River Oaks Plant House paid
Terrace $500 a month under the terms of the 1999 lease amendment. He also stated
River Oaks Plant House was obligated to pay ad valorem taxes on the property
pursuant to the lease agreement. However, on re-direct examination, Taub admitted
the lease required River Oaks Plant House to "only pay the ad valorem taxes as they
put up improvements." The uncontested evidence showed that no improvements were
ever made to the 1.25 acres. 

 On appeal, Terrace contends a statement made by Taub during cross-examination constitutes legally sufficient evidence to support the award of $12,500
for fair market rental value damages. Specifically, Terrace relies on the Taub's
comment that River Oaks Plant House was paying Terrace $125,000 to $130,000 a
year "for their operation." From this testimony, Terrace contends the jury could have
extrapolated that River Oaks Plant House was paying Terrace approximately $10,000
a month in rent in 1996 for the property that fronted Westheimer and Buffalo
Speedway. Because the 1.25 acres alleged to have been affected by the trespass is 1.8
times larger than the property River Oaks Plant House rented in 1996, Terrace
contends the jury could have inferred that the 1.25-acres could have generated
$18,000 in rent in 1996. On this basis, Terrace asserts the award of $12,500 in fair
market rental value damages is within the evidence. 

 Terrace presented no evidence showing the appropriate method for calculating
fair market rental value. Terrace argues the jury could have reasonably inferred that
a willing renter would have been required to rent the entire 1.25 acres alleged to have
been affected by the trespass for a one-month term. Terrace makes this argument
even though it never presented evidence showing the entire 1.25 acres was used by
defendants or that defendants trespassed on Terrace's property for more than a 10-day
period (only seven days of which were within the time-frame the jury was allowed to
consider, i.e., on or after September 17, 1996). Terrace also presented no evidence
showing the 1.25 acres are comparable to the property rented in 1996. 

 Taub's statement that River Oaks Plant House paid Terrace $125,000 to
$130,000 "for their operation" must also be put into the context of Taub's other
testimony. The statement was made during cross-examination, when appellant's
counsel questioned Taub about the amount of rent River Oaks Plant House was
paying in 1999 for the .484-acre and .7653-acre tracts comprising the 1.25 acres at
issue in this suit. Taub's testimony was as follows:

 Q: But the new lease in March of '99, the River Oaks Plant House
people leased this rectangular tract which is the . . . .484 tract. 
And they leased the .7653 acre tract in March of '99?

. . . .


 A: Sometime in '99, yes, sir. That was the amended lease.


 Q: And for the right--these two tracts which are shown here, the
.7653 acre tract and the .484 acre tract, the River Oaks Plant
House pay $500 a month don't they?


 A: That's not totally correct, sir. That's what they--the amendment,
yes. But they're paying us 125 to a 100--$30,000 a year for their
operation, sir. And part of that is this $500. And please, sir, the
$500 also has a codicil to it that they would pay the ad valorem
taxes on the property as they constructed improvements.

 Once Taub's statement is put into context, the record reveals River Oaks Plant
House paid Terrace $125,000 to $130,000 "for their operation" in 1999, which does
not support Terrace's theory that the jury could infer from this figure that River Oaks
Plant House was paying monthly rent of approximately $10,000 in 1996, at the time
of the alleged trespass. Moreover, Taub clearly stated that the $125,000 to $130,000
figure included the rent River Oaks Plant House was paying in 1999 for both the
.7653-acre and the .484-acre tracts at issue in this suit, as well as the more valuable
land that fronted Westheimer and Buffalo Speedway. 

 Taub also did not testify that River Oaks Plant House paid Terrace $125,000
to $130,000 a year in rent; rather, he testified that River Oaks Plant House paid
Terrace that amount a year "for their operation." Taub did not specify what was
included in this figure, although the record reveals this figure was not limited to rent. 
Taub testified River Oaks Plant House was obligated under the lease to pay ad
valorem taxes when it made improvements to the property. Because River Oaks Plant
House had placed buildings on the front portion of the property, Taub testified River
Oaks Plant House paid Terrace $25,000 a year for ad valorem taxes. According to
Taub, River Oaks Plant House also provided insurance on the property. Taub's only
testimony about rent was that River Oaks Plant House paid $500 a month rent in 1999
for the subject property. Though Taub offered testimony about what River Oaks
Plant House paid Terrace in 1999 "for their operation," Terrace offered no evidence
of the fair market rental value of the subject property in 1996.

 Taub's statement that River Oaks Plant House paid Terrace $125,000 to
$130,000 in 1999 "for their operation" is not probative of the fair market rental value
of the subject property in September 1996. In sum, Terrace presented no evidence to
support the $12,500 award for fair market rental value damages. 

 Viewing the evidence as we must, we hold Terrace failed to present legally
sufficient evidence to support the trial court's award of fair market rental value
damages.

 We sustain defendants' issue two. (2)


B. Liability of American Refuse

 The trial court rendered judgment in favor of Terrace against M.L. Deer and
American Refuse jointly and severally in the amount of $16,236.32. This figure
included the $12,500 jury award for fair market rental damages, plus pre-judgment
interest. The judgment also provided that M.L. Deer must indemnify American
Refuse. 

 American Refuse did not file a notice of appeal in this case; however, it filed
an appellee's brief in response to M.L. Deer and BRI's brief. In its appellee's brief,
American Refuse requests that, in the event this Court reverses and renders judgment
that Terrace take nothing from M.L. Deer and BRI, or in the event of a remand, this
Court render judgment that Terrace also take nothing from American Refuse. 

 Generally, a party who seeks to alter the trial court's judgment must file a
notice of appeal. Tex. R. App. P. 25.1(c). However, in light of our holding that the
evidence was legally insufficient to support the jury's award of damages for fair
market rental value, we reverse the joint and several judgment based on this measure
of damages and render judgment that Terrace take nothing as to both M.L. Deer and
American Refuse. See Turner, Collie & Braden, Inc. v. Brookhollow, Inc., 642
S.W.2d 160, 166 (Tex. 1982) (holding reversal is required when rights of appealing
and nonappealing parties are so interwoven or dependent on each other as to require
reversal of whole judgment when part thereof is reversed); see also Ex parte Elliot,
815 S.W.2d 251, 252 (Tex. 1991); Osuna v. Quintana, 993 S.W.2d 201, 211 (Tex.
App.--Corpus Christi 1999, no pet.); Belz v. Belz, 667 S.W.2d 240, 244 (Tex.
App.--Dallas 1984, writ ref'd n.r.e.).

C. Sufficiency of Evidence--Intrinsic Value of trees

 Defendants' point of error four states that the evidence is legally insufficient 
to support the award of damages to Terrace against BRI for the intrinsic value of
Terrace's trees because there was no evidence the trees were cut down on or after
September 17, 1996. 

 With regard to this issue, the trial court submitted the following questions to
the jury:

Question No. 1A


 Did any of those named below cut down trees on the property in
question at any time on or after September 17, 1996? (3)


 A party's conduct includes the conduct of another who acts
with the party's authority. Authority for another to act for
a party must arise from the party's agreement that the other 
act on behalf and for the benefit of the party. If a party so
authorizes another to perform an act, that other party is also
authorized to do whatever else is proper, usual, and
necessary to perform the act expressly authorized.


 Answer "Yes" or "No" for each of the following:


 a. M.L. Deer Construction Co. Yes 

 

 b. BRI River Oaks L.P. Yes 


 If you have answered any part of Question No. 1A "Yes," then
answer the following question. Otherwise, do not answer the following
question.



Question No. 1B



 What sum of money, if paid now in cash, would fairly and
reasonably compensate Terrace Land Co. for the intrinsic value of the
trees, if any, cut down on or after September 17, 1996 by any party as to
which you have answered "Yes" in Question No. 1A?


 You are instructed that a landowner may recover the
intrinsic value of native trees only if they are used for
shade, a barrier to neighboring roads or property, or had
other alternative uses and were available for sale in local
nurseries. Do not consider any other element of damages. 
Do not include interest on any amount of damages you
find.


 Answer in dollars and cents for damages, if any, as to any party as to
which you have answered "Yes" in question 1A.


 a. M.L. Deer Construction Co. -0- 

 

 b. BRI River Oaks L.P. $13,500

 The jury was also instructed, "A fact is established by circumstantial evidence
when it may be fairly and reasonably inferred from other facts proved."

 Taub testified he saw a man trimming and cutting trees on Terrace's property
on what he believed to be September 16, 1996. Taub approached the man and asked
him what he was doing. The man told Taub he was under a contract with River Oaks
Apartments and that he was completing the contract. Taub informed the man he was
on private property and asked him to leave. The man refused to leave, stating he was
working under the authority of the management of River Oaks Apartments and that
he was planning to complete the job. On cross-examination, Taub clarified that he
did not actually see the man cut down any trees; rather, he saw the man trimming
trees on Terrace's property. 

 Robert Atkinson, Jr., a professional land surveyor, testified he was hired by
Taub to conduct a survey because trees were being cut on Terrace's property. 
Atkinson's crew visited the property for the purpose of conducting the survey
between September 19 and 21, 1996. At that time, the surveyors found that the 27
trees at issue had been cut down. 

 Atkinson personally visited the property only once sometime between
September 21 and October 1, 1996. Although he could not give an exact date,
Atkinson stated the trees had been freshly cut and opined he estimated the trees had
been cut down within the previous six months. (4) Atkinson prepared a survey, which
showed that all of the trees cut down were within 12 feet of the cinder block wall.

 Dennis Clooney testified he was contracted by a landscaping company to trim
trees for River Oaks Apartments. He recalled trimming trees along the wall and
cutting two small trees leaning against the wall in February 1996. 

 Mark Deer, owner of M.L. Deer, testified the work on the wall was completed
on September 19 or 20, 1996, but that the dumpster could not be moved until the 23rd
because of rain. Deer stated his crew painted the entire wall and admitted to working
on the eastern (i.e., Terrace) side of the wall. He stated his crew may have removed
some vines that grew on the wall to allow them to paint.

 The question we must answer is whether the evidence was legally sufficient for
the jury to find that defendants cut down Terrace's trees on or after September 17,
1996. When evidence offered to prove a vital fact is so weak as to do no more than
create a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence. Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983). Similarly, the "equal inference rule" traditionally provided that
meager circumstantial evidence from which equally plausible but opposite inferences
may be drawn is speculative and thus legally insufficient to support a finding. See,
e.g., Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). However,
the Texas Supreme recently attempted to clarify the equal inference rule in Lozano
v. Lozano, 52 S.W.3d 141 (Tex. 2001). Chief Justice Phillips, writing for a majority
of the justices, stated as follows:

 Properly applied, the equal inference rule is but a species of the no
evidence rule, emphasizing that when the circumstantial evidence is so
slight that any plausible inference is purely a guess, it is in legal effect
no evidence. But circumstantial evidence is not legally insufficient
merely because more than one reasonable inference may be drawn from
it. If circumstantial evidence will support more than one reasonable
inference, it is for the jury to decide which is more reasonable, subject
only to review by the trial court and the court of appeals to assure that
such evidence is factually sufficient.


 Circumstantial evidence often requires a fact finder to choose
among opposing reasonable inferences. . . . And this choice in turn may
be influenced by the fact finder's views on credibility. Thus, a jury is
entitled to consider the circumstantial evidence, weigh witnesses'
credibility, and make reasonable inferences from the evidence it chooses
to believe. 


Id. at 148-49 (Phillips, C.J., concurring and dissenting). 

 Considering the evidence in the light most favorable to the jury's finding, and
applying the principles enunciated in Lozano, we conclude the evidence provided
legal support for the jury's verdict. 

 Because Taub saw a man trimming, not cutting, trees on Terrace's property on
September 16, the jury could have logically concluded that the trees were still
standing on September 16. The evidence showed that, when the survey crew arrived
on September 19-21, the trees had been cut down. Thus, if the trees were still
standing on the 16th, but were cut down by the 19th, the jury could have reasonably
inferred that the trees were cut down on September 17 or 18.

 Other circumstantial evidence presented further supports the jury's finding. 
For example, the evidence showed that the trees were cut down in close proximity to
the cinder block wall (i.e., within approximately 12 feet) and that defendants were
repairing and painting the wall from September 13 through the 19th or 20th. From
this evidence, the jury could have reasonably inferred that defendants were using and
controlling Terrace's property near the wall during the period of September 17 to 20. 
The jury could have logically believed that, not only did defendants have the
opportunity to cut down the trees, but that they also had the motive to do so, i.e., to
clear the area near the wall to make it easier to complete the repairs. 

 The jury could also have reasonably believed that the man Taub saw trimming
Terrace's trees on the 16th was also cutting down trees on that day. Based on
common sense, the jury could then have inferred that it would take one man longer
than one day to cut and clear 27 trees. See id. at 168 (Baker, J., concurring and
dissenting) (noting common sense can provide logical bridge between circumstances
and jury's finding). Thus, the jury could have logically concluded that the tree
cutting continued until September 17 or 18.

 Clooney's testimony that he had cut down two trees on Terrace's property in
February 1996 could also be interpreted by the jury to show a past willingness and
propensity on the part of BRI's contractors to cut down Terrace's trees. Moreover,
based on Atkinson's testimony that the trees were cut down within six months of
September (i.e., March 1996 or later), the jury could have believed that the 27 trees,
for which Terrace sought damages, were not cut down by Clooney in February 1996.

 We are not suggesting that these are the only reasonable inferences that could
be drawn from the circumstantial evidence presented. However, as Chief Justice
Phillips stated in Lozano, "the mere fact that more than one reasonable inference may
be drawn from this evidence does not mean that no evidence supports the jury's
verdict. If more than one reasonable inference may be drawn, a question of fact is
ordinarily presented for the jury to decide." Id. at 153 (Phillips, C.J., concurring and
dissenting). 

 Here, based on the circumstantial evidence, the jury could have reasonably
inferred that defendants cut down Terrace's trees on or after September 17, 1996. 
Considering the evidence in the light most favorable to the jury's finding as we must,
we hold the evidence was legally sufficient to show the trees were removed on or
after September 17, 1996. Accordingly, we overrule defendants' point of error four.

D. Failure to "Fully Open"

 In point of error five, defendants contend the trial court erred by failing to
require Terrace's counsel to "fully open" during closing argument. Specifically,
defendants complain the trial court allowed counsel for Terrace to argue to the jury
regarding damages in rebuttal when Terrace's counsel failed to fully open by
addressing these issues in his initial argument. 

 Rule 269(b) of the Texas Rules of Civil Procedure states as follows: "In all
arguments, and especially in arguments on the trial of the case, the counsel opening
shall present his whole case as he relies on it, both of law and facts, and shall be heard
in the concluding argument only in reply to the counsel on the other side." Tex. R.
Civ. P. 269(b). 

 At the close of Terrace's initial argument, the trial court sustained defendants'
objection relating to Terrace's failure to address its damage claim in the opening
portion of its closing argument. Defendants' counsel then presented his closing
argument. In rebuttal, Terrace's counsel presented argument relating to the
calculation of Terrace's damage claim. Although defendants now complain on appeal
that Terrace could not make this argument in rebuttal for the first time, defendants
failed to object on that basis during Terrace's rebuttal. 

 "[T]here is no reversible error resultant because a plaintiff fails to open and
fully discuss the whole case in the opening argument. The error, if any under the
circumstances, would occur when the same plaintiff is permitted to discuss matters
in the closing argument which should have been injected when he opened." 
Continental Bus. Sys., Inc. v. Toombs, 325 S.W.2d 153 (Tex. Civ. App.--Ft. Worth
1959, writ ref'd n.r.e.). In other words, no error occurred when Terrace failed to
discuss the damages issue in the opening portion of its argument. Id. If any error was
committed, it was committed when Terrace discussed the damages issue in the
rebuttal portion of its argument. Id. However, defendants failed to preserve any
complaint relating to this issue because they did not object when Terrace raised this
matter in its rebuttal. Tex. R. App. P. 33.1.

 We overrule defendants' point of error five.

E. Improper Jury Argument

 In point of error six, defendants complain Terrace's counsel engaged in six
different instances of improper jury argument during closing argument. (5) 

 Improper jury arguments are usually referred to as one of two types: "curable"
or "incurable." Otis Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex. 1968). To
preserve error on curable argument, counsel generally must object and, if the
objection is sustained, request the court to instruct the jury to disregard the argument. 
Id.; Texas Employers Ins. Ass'n v. Puckett, 822 S.W.2d 133, 135 (Tex.
App.--Houston [1st Dist.] 1991, writ denied). However, objection is not required in
the case of incurable argument, which is argument so inflammatory that its harmful
or prejudicial nature cannot be cured by an instruction to disregard. Puckett, 822
S.W.2d at 135. To complain on appeal of incurable jury argument not otherwise
ruled upon by the trial court, an appellant must have presented the complaint in a
motion for new trial. Tex. R. Civ. P. 324(b)(5). 

 Defendants complain that Terrace's counsel invited the jury to consider matters
outside the evidence, specifically, who had cut down 50 trees on Terrace's property
in December of 1999. Defendants also contend the following statement by Terrace's
counsel constituted improper jury argument: "What we're here today is for ya'll to
accept the evidence, not these lawyers. Figures don't lie, liars figure."

 Defendants did not object to or request the trial court to instruct the jury to
disregard these jury arguments. Thus, on appeal, defendants would not only have to
show that the arguments were "incurable," but that they preserved the complaint by
presenting it in a motion for new trial. Tex. R. Civ. P. 324(b)(5). Because defendants
failed to file a motion for new trial, they have waived any complaints on appeal with
respect to these jury arguments. Tex. R. Civ. P. 324(b)(5); Austin v. Shampine, 948
S.W.2d 900, 906 (Tex. App.--Texarkana 1997, writ dism'd by agr.). 

 Defendants also complain Terrace's counsel told the jury that (1) the jury
should "go by the law"; (2) defendants' counsel "didn't tell you about the law"; (3)
defendants "should have filed something there"; and (4) defendants "could have had
their day in court before." Defendants objected to these statements, and the trial court
ruled on the objection by sustaining it; however, defendants failed to request that the
trial court to instruct the jury to disregard the argument. Thus, to prevail, defendants
must show that the statements constituted incurable jury argument. See Busse v. Pac.
Cattle Feeding Fund No. 1, Ltd., 896 S.W.2d 807, 815 (Tex. App.--Texarkana 1995,
writ denied) (stating failure to press for instruction at time of "curable" jury argument
operates as waiver of any complaint that may be made about argument). 

 To determine whether the jury argument was incurable, we examine the record
to determine whether an instruction to disregard Terrace's allegedly improper
arguments would have sufficiently remedied the harm. See Standard Fire Ins. Co. v.
Reese, 584 S.W.2d 835, 839 (Tex. 1979); Goswami v. Thetford, 829 S.W.2d 317, 321
(Tex. App.--El Paso 1992, writ denied). Only rarely will an improper argument so
prejudicially influence the jury that the harm cannot be cured. Reese, 584 S.W.2d at
839-40.

 Examining Terrace's argument in context of the record, we find the likelihood
of prejudice less certain than the harm from other arguments that have been held
incurable. See, e.g., In re W.G.W., 812 S.W.2d 409, 415, 416 (Tex. App.--Houston
[1st Dist.] 1991, no writ) (holding attempt to link mother's cervical cancer with
immoral conduct in custody dispute was incurable because there was no evidence to
support such connection); Howard v. Faberge, Inc., 679 S.W.2d 644, 649-50 (Tex.
App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding demonstration of product's
non-flammability by counsel's attempt to ignite his arm during closing argument was
incurable when experiment was not cumulative of evidence adduced during trial);
Circle Y of Yoakum v. Blevins, 826 S.W.2d 753, 756-59 (Tex. App.--Texarkana
1992, writ denied) (concluding unsupported allegations that opposing counsel
manufactured evidence and suborned perjury are generally incurable); Texas
Employers' Ins. Ass'n v. Guerrero, 800 S.W.2d 859, 862-67 (Tex. App.--Antonio
1990, writ denied) (holding intentional appeal for verdict based on parties' race or
ethnicity is incurable). 

 We are unconvinced that the arguments of which defendants complain could
not have been cured by an instruction to disregard. Because the jury arguments were
not incurable, defendants have failed to preserve error.

 We overrule defendants' point of error six.

F. Directed Verdict on Punitive Damages

 In its sole cross-point, Terrace complains the trial court erred in granting a
directed verdict as to its claim for punitive damages. 

 We review the grant of a directed verdict in the light most favorable to the
party against whom the verdict was rendered and disregard all contrary evidence and
inferences. See Qantel Bus. Sys., Inc. v. Custom Controls, 761 S.W.2d 302, 303 (Tex.
1988); Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 476 (Tex. App.--Houston [1st Dist.]
2000, pet. denied). The movant is entitled to a directed verdict when (1) a defect in
the opponent's pleading makes the pleading insufficient to support a judgment; (2)
the evidence conclusively proves the truth of factual propositions that, under the
substantive law, establish the right of the movant to judgment; or (3) the evidence is
legally insufficient to raise an issue of fact on a fact proposition that must be
established for the movant's opponent to be entitled to judgment. See Neller v.
Kirschke, 922 S.W.2d 182, 187 (Tex. App.-- Houston [1st Dist.] 1995, writ denied).

 Exemplary damages may be awarded if the claimant proves by clear and
convincing evidence that the harm for which he seeks recovery of exemplary damages
resulted from fraud or malice. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(1)
(Vernon 1997). 

 The legislature has defined "malice" in this context to mean as follows:

 (A) a specific intent by the defendant to cause substantial injury to the
claimant; or


 (B) an act or omission:


 (i) which when viewed objectively from the standpoint of the
actor at the time of its occurrence involved an extreme degree of
risk, considering the probability and magnitude of the potential
harm to others; and


 (ii) of which the actor had actual, subjective awareness of the
risk involved, but nevertheless proceeded with conscious
indifference to the rights, safety, or welfare of others.

 

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7)(B) (Vernon 1997); see also Transp.
Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994) (providing same definition for
malice's common law ancestor, "gross negligence"). 

 The definition of malice required that defendants either intended to cause
substantial injury to Terrace or acted in a manner involving an extreme degree of risk. 
Terrace contends evidence was presented from which the jury could have concluded
that (1) BRI, and its agent M.L. Deer, knew the 27 trees at issue were on Terrace's
property and (2) defendants acted with intent to destroy the 27 trees, which
constitutes an intent to cause substantial property damage. 

 Exemplary damages are levied only to punish defendants for "outrageous,
malicious, or otherwise morally culpable conduct." Moriel, 879 S.W.2d at 16. 
"Every tort involves conduct that the law considers wrong, but punitive damages are
proper only in the most exceptional cases." Id. at 18. When determining whether to
award exemplary damages, the fact finder must consider the nature of the wrong, the
character of the conduct, the degree of culpability, the situation and sensibilities of
the parties, the offensiveness of the conduct to a public sense of justice and propriety,
and the size of an award needed to deter similar future conduct. See Alamo Nat'l
Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). 

 The record contains no evidence of ill-will, spite, or a specific intent on the part
of defendants to cause substantial injury to Terrace. (6) See Continental Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 454 (Tex.1996); see also Oni, Inc. v. Swift, 990
S.W.2d 500, 503 (Tex. App.--Austin 1999, no pet.). The evidence indicates that
defendants' actions were not motivated by any wanton or malicious desire to injure
Terrace, but rather by a desire to repair the cinder block wall. See Oni, 990 S.W.2d
at 503. Although the circumstantial evidence may suggest that defendants cut down
Terrace's trees, there is no evidence that defendants cut down Terrace's trees with the
intent to cause Terrace substantial injury, nor is there any evidence that defendants
had actual awareness of an extreme risk and proceeded with conscious indifference
to the rights, safety, or welfare of Terrace. See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.001(7)(B); Moriel, 879 S.W.2d at 22.

 None of the evidence introduced at trial suggested that defendants' cutting of
Terrace's trees is the type of egregious violation for which exemplary damages are
appropriate. Therefore, we conclude that there is no evidence from which the jury
could reasonably infer that defendants acted maliciously. Because malice is a
statutory prerequisite to an award of exemplary damages, the trial court did not err in
directing a verdict on Terrace's claim for exemplary damages.

 We overrule Terrace's sole cross-point.

CONCLUSION


 Based on the evidence at trial, we reverse the portion of the trial court's
judgment awarding Terrace damages against M.L. Deer and American Refuse for fair
market rental value, and render judgment that Terrace take nothing on its claims
against M.L. Deer and American Refuse for those damages. We affirm the portion
of the trial court's judgment awarding damages against BRI for the intrinsic value of
Terrace's trees. 






 Frank C. Price (7)

 Justice


Panel consists of Justices Cohen, Radack, and Price. 


Do not publish. Tex. R. App. P. 47.
1. Although defendants have filed a joint brief, this point of error is only
applicable to only the damages awarded against M.L. Deer and American
Refuse.
2. Because of the disposition of point of error two, we need not address points of
error one and three, which discuss defendants' complaints that "fair market
rental damages" were an improper measure of damages and that the fair market
rental damages were not supported by expert testimony.
3. Terrace did not file its original petition until September 17, 1998. A two-year
statute of limitations governs suits for trespass for injury to realty. Tex. Civ.
Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2002). As such, the jury
question contains the temporal limitation of September 17, 1996 because any
injury caused by defendants before that time have been barred by the statute of
limitations, which defendants pled as an affirmative defense.
4. The trial court sustained an objection to this testimony; however, defendants
failed to request the trial court to instruct the jury to disregard the testimony. 
Thus, defendants have waived any complaint about this testimony on appeal. 
See State Bar of Texas v. Evans, 774 S.W.2d 656, 659 n.6 (Tex. 1989) (stating,
after objection is sustained, failure to request court to instruct jury to disregard
inadmissible testimony waives error if instruction would have cured error);
Peshak v. Greer, 13 S.W.3d 421, 424-25 (Tex. App.--Corpus Christi 2000, no
pet.) (holding error waived by not following sustained objection with request
for instruction to disregard).
5. Three of these instances relate specifically to Terrace's fair market rental value
damages request. Because we have held that such damages were not supported
by legally sufficient evidence, we need not discuss these alleged instances of
improper jury argument.
6. Recovery of punitive damages requires a finding of an independent tort with
accompanying actual damages. Schlueter v. Schlueter, 975 S.W.2d 584, 589
(Tex. 1998); Fed. Express Corp. v. Dutschmann, 846 S.W.2d 282, 284 (Tex.
1993). Because we have held the evidence was legally insufficient to support
damages for fair market rental value, we will consider only the evidence
related to the cutting of Terrace's trees in determining if the trial court properly
granted the directed verdict on Terrace's request for exemplary damages.
7. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.